In re Mary Janice ARCHER, Debtor.

Bankruptcy No. 583–00170.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Sept. 29, 1983.

Jeanette Robison, El Paso, Tex., for debtor.

Kelly G. Moore, Brownfield, Tex., for Brownfield State Bank & Trust Co.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

Mary Janice Archer, debtor, filed petition for order for relief under Chapter 11 of Title 11, United States Code, on September 1, 1983. On September 6, 1983, Brownfield State Bank & Trust Company ("Bank") filed motion to prohibit use of cash collateral. The following summary constitutes findings of fact and conclusions of law after nonjury trial on September 13, 1983.

On the date the petition in bankruptcy was filed debtor owed at least $420,000.00 to the bank. On that same date the bank was indebted to debtor on a certificate of deposit in the principal sum of $8,000.00. The certificate of deposit had not been pledged by the debtor to the bank as additional collateral for her debt to it.

After she filed the petition for order for relief on September 1, 1983, debtor, accompanied by her attorney, took to the bank a copy of the first page of the skeletal petition reflecting that the petition had been received and filed by the bankruptcy clerk. Debtor tendered the certificate of deposit and demanded the amount of cash due thereon. The bank's enthusiasm for honoring debtor's demand, when she owed it more than fifty times the amount of the certificate, was not boundless. However, after conference with counsel, the bank paid over to debtor the sum of $7,539.88, representing the principal and accrued interest on the $8,000.00 certificate, less $544.00 penalty for early withdrawal.

The bank argued at the trial that it was on the horns of a dilemma. It thought that it had the common law right to setoff the amount which it owed to the debtor on the certificate against the debtor's obligation to it. However, its cognizant officers knew that a creditor is not permitted to setoff unilaterally after a bankruptcy petition has been filed, because setoff by virtue of § 553(a) is subject to the automatic stay provisions of § 362. The bank was faced with a turnover demand under § 542(a) which requires an entity in possession of property that the debtor-in-possession may use under § 363 to deliver to the debtor-in-possession such property or the value of the property. Section 542(b) appears to reserve to the bank the right to refuse to pay a debt which may be setoff under § 553, but because of the existence of the automatic stay no setoff could be made until the bank obtained relief from the automatic stay pursuant to § 362(a)(7). Also, through conference with counsel, the bank's officers learned that the cases which have meaningfully treated the setoff issues have taken different approaches where the setoff is attempted in a Chapter 7 liquidation case and in those cases where the setoff is incident to a reorganization case under Chapter 11. A primary purpose[1] of the automatic

---

1. The underlying rationale for staying the bank's setoff rights was recognized by the House Judiciary Committee:

    "In a liquidation case any setoff that occurs after the commencement of the case has no effect on the debtor. The amount that the creditor recovers through setoff will permit him to recover a higher percentage of his total claim than other creditors, but it will not interfere with the debtor's operation or business in any way, because the debtor has already gone out of business. Whether the setoff is of a bank deposit or of mutual debts and credits with another merchant or business the effect is the same. *The situation for the treatment of setoff in a reorganization case is very different than in a liquidation case. In order to accomplish a successful reorganization it is important that business proceed as usual for the debtor. Setoff is an interruption in the conduct of business and may have detrimental effects on the attempted reorganization.* (emphasis added) H. Rep. No. 95–595, 95th Cong., 1st Sess. (1977) 183, reprinted in 1978 U.S.Code Cong. & Admin. News 6143.

stay provisions against setoff provided by § 362(a)(7) is to afford the debtor in a Chapter 11 reorganization an opportunity to continue its business with its available assets.

Therefore the bank was faced with a proper turnover demand made by a debtor-in-possession who is qualifiedly permitted to use property which is otherwise subject to the right of setoff. The bank could not exercise those setoff rights until it obtained relief from the automatic stay. The bank could "freeze" the account to prevent the debtor's use of the monies until it could file and prosecute it's claim for modification of stay to permit setoff. However, there is a split of authority as to whether the "freezing" of the account is, in effect, tantamount to setoff. *See e.g. Kenney's Franchise Corporation v. Central Fidelity Bank N.A., Lynchburg,* 22 B.R. 747 (D.C.W.D.Va.1982) (deposit account is cash collateral and bank not required to turn over funds to debtor-in-possession without adequate protection). In *Matter of Gazelle, Inc.,* 17 B.R. 617 (Bkrtcy.W.D.Wis.1982) (refusal of bank to release frozen assets did not constitute contempt or violation of § 362). But *see In re Executive Associates, Inc.,* 24 B.R. 171 (Bkrtcy.S.D.Tex.1982) (freeze on debtor's account, while not technically a setoff, is tantamount to setoff which has the result of an unauthorized interference with the property of the Chapter 11 debtor without leave of court); *In re Cusanno,* 17 B.R. 879 (Bkrtcy.E.D.Pa.1982) (no difference between "administrative hold" and "setoff").

The bank's officers did not want to run the risk of a possible judgment of contempt if it froze the account until it could obtain relief from the automatic stay. It searched for an alternative. It found a possible vehicle to escape from the dilemma in § 506(a) which provides that an allowed claim of a creditor that is subject to setoff under § 553 is a secured claim. Concluding that if it honored the turnover demand the monies so delivered into the possession of the debtor-in-possession were subject to its secured claim it paid the monies to the debtor and promptly filed motion to prohibit use of cash collateral which is the subject of this memorandum.

The debtor's response to the motion to prohibit use of cash collateral set out three defenses. First, debtor claims the bank waived any setoff rights it might have had when it released the monies to debtor. Debtor claims the funds do not represent cash collateral to any extent and that in any event the bank had perfected no security interest under state law. Finally debtor says that the bank voluntarily paid the monies to her and thereby waived any right to claim an interest in these monies.

On the issue of whether the bank has waived its setoff rights the courts appear to be in agreement that "the privilege is one which must be asserted; otherwise it is considered waived and lost." *In re Metropolitan Intern., Inc.,* 616 F.2d 83 (3rd Cir. 1980). There are three steps that must be taken to maintain a setoff. There must first have been a decision to exercise the right to setoff, a subsequent action which completes the setoff, and finally a record which verifies that the action has been taken. *Baker v. National City Bank of Cleveland,* 511 F.2d 1016 (6th Cir.1975). A mere declaration of an intent to setoff retrospectively does not establish a setoff. *In re McCormick,* 5 B.R. 726, 730 (Bkrtcy.N.D. Ohio 1980). In this case the bank took no affirmative action to exercise its setoff rights. It elected to avoid the risks of adverse judgment if it proceeded under either § 542(b) or freezing the account until the stay could be modified. The bank lost any opportunity that it might have had to effect a setoff.

Debtor's contention that the funds are not cash collateral is without merit. Pursuant to § 363(a) "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest. As cash collateral, the debtor cannot use the funds without the bank's consent or court order. Section 363(c)(2)(A) and (B).

Debtor's contention that the bank has no secured claim because there was no perfected security interest under state law is likewise meritless. It is true that the bank had not additionally collateralized its loan with a pledge of the certificate and it had not otherwise collateralized its loan against the certificate under article 9. However, under § 506(a) the monies turned over by the bank to the debtor were subject to the secured claim of the bank because that section specifically includes property that is subject to set off under § 553 in its definition of a secured claim. There is nothing in § 506, nor elsewhere in the Code, that indicates that continued possession is required to maintain the secured claim. Therefore, as far as the monies represented by the certificate are concerned the bank had a secured claim as of the date and time of filing of the petition for order for relief under Chapter 11 and that secured claim was not terminated when the funds were delivered over to the debtor, unless, as debtor contends, the turnover represents consent.

Under the facts of this case I cannot find that the turnover of the funds to the debtor represents waiver. There is nothing in this scenario upon which I could base a finding that the payment of the monies to the debtor was entirely voluntary. Without the intent to waive the secured claim present in the minds of the cognizant bank employees there was no knowing waiver. I find that the bank turned over the funds to the debtor based on the belief, whether or not mistaken, that the Code required such turnover.

I conclude, therefore, that the sum of $7,539.88 turned over by the bank to the debtor on September 1, 1983, represents cash collateral against which the bank has a secured claim under § 506(a) and that the debtor cannot use those funds without the bank's consent or without a court order.

No evidence was adduced at the hearing as to the intended use to which the monies will be put by the debtor. The bank expressed willingness to cooperate with the debtor to permit use of the money for some purposes. If the parties cannot agree on a cash collateral order I will schedule evidentiary hearing upon request.

It is, therefore, ORDERED by the Court that the monies totalling $7,539.88 delivered by the bank to the debtor, Mary Janice Archer, be, and they are hereby, deemed to be cash collateral of the bank, Brownfield State Bank & Trust Company, and those funds may not be used by the debtor without consent of the bank or order of this Court.

All relief not herein granted is denied.