**In the Matter of O'SULLIVAN'S FUEL OIL CO., INC., Debtor.**

**Thomas M. GERMAIN, Trustee for the Estate of O'Sullivan's Fuel Oil Co., Inc., Plaintiff,**

v.

**CONNECTICUT NATIONAL BANK, Defendant.**

**Bankruptcy No. 2–84–00038.
Misc. Civ. No. H–87–63(PCD).
Adv. No. 2–87–0078.**

United States District Court,
D. Connecticut.

July 22, 1988.

Thomas M. Germain, Hartford, Conn., for plaintiff-trustee.

Janet C. Hall and Robert A. Izard, Robinson & Cole, Hartford, Conn., for defendant.

### ORDER

DORSEY, District Judge.

After review and over objection the Bankruptcy Judge's decision is adopted and approved. Plaintiff's argument notwithstanding, the argument is appropriately considered a core proceeding. In view of the previous dismissal of plaintiff's RICO claim and in view of the Bankruptcy Judge's decision herein adopted and approved, it is further held that plaintiff's Motion to Revoke Referral to the Bankruptcy Judge is denied.

SO ORDERED.

RECOMMENDED DECISION REQUESTED BY DISTRICT COURT RE: WHETHER PENDING ADVERSARY PROCEEDING IS A CORE OR NON-CORE PROCEEDING

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

The plaintiff in the above adversary proceeding, which seeks $6,000,000.00 damages from the defendant and trial by jury, filed a motion in the district court to withdraw the reference of the proceeding from the bankruptcy court. Bankr.R. 5011(a) ("A motion for withdrawal of a case or proceeding shall be heard by a district judge."). In a ruling entered February 17, 1988, the district court ordered that resolution of the "motion will be stayed pending the bankruptcy judge's recommended decision on the issue of whether this proceeding is ... a core proceeding...." *See* 28 U.S.C.A. § 157(b)(3) (West Supp.1988) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."). The parties have filed memoranda of law with the bankruptcy court, the plaintiff urging a non-core and the defendant a core determination. After a review of these memoranda and the pleadings (*e.g.*, the amended complaint and the plaintiff's brief statement of the cause of action for each count), it is recommended that this proceeding be determined to be a core proceeding because it arose in the bankruptcy case.

### II.

The complaint which commenced the proceeding contains six counts, but the basis for the relief sought in each count relies almost entirely upon the facts asserted by the plaintiff in paragraphs 1 through 15 of the First Count. These allegations set forth the following events.

O'Sullivan's Fuel Oil Co., Inc. (the debtor) had filed a voluntary chapter 11 petition on January 18, 1984. The chapter 11 case

was converted to one under chapter 7 on July 30, 1986, and the plaintiff, Thomas M. Germain, became trustee of the debtor's estate.

The debtor, located in New Haven, Connecticut, had been in the business of selling fuel oil to retail accounts. During 1981, the debtor borrowed $500,000.00 from First Bank, a bank with whom the defendant, Connecticut National Bank (CNB), merged in March 1984. First bank received a mortgage lien on the debtor's fuel oil storage facility as security for the loan. Starting in November 1983, approximately two months prior to the filing of the debtor's bankruptcy petition, First Bank "undertook to exercise control of [the debtor] in order to serve First Bank's own interests." *Complaint* ¶ 7. First Bank demanded that one James Tisdale be placed in control of the debtor's business, and recommended that the debtor file a chapter 11 petition utilizing a law firm selected by the bank. After the filing of the petition, First Bank or CNB required the debtor to replace its insurance agency; insisted that Tisdale and his brother, Charles Tisdale, remain in control of the debtor's business when the Tisdales had no competence to operate the business and wasted its assets; resisted shareholder efforts to oust the Tisdales by threatening to terminate financing and to force the business to close; encouraged the organization of a successor corporation by the Tisdales to take over the debtor's assets; and misused court-approved financing to satisfy its prepetition debt. These actions, which persisted until August 24, 1984 when the Tisdales relinquished control of the debtor, are claimed to constitute tortious interference with the debtor's business, to have been "wilful, intentional and without just cause or excuse" (*Complaint* ¶ 13), and to have caused the debtor's business to be "destroyed, to its great financial loss." *Complaint* ¶ 15.

The plaintiff in his complaint contends that these alleged facts will support a recovery of $1,000,000.00 for compensatory damages, $1,000,000.00 in punitive damages, and treble damages against CNB based upon coercion and duress (Second Count); fraudulent misrepresentation (Third Count); a pattern of racketeering activity (Fourth Count); breach of an obligation to act in good faith (Fifth Count); and unfair or deceptive trade practices (Sixth Count).

### III.

Core proceedings under 28 U.S.C. § 157(b) are those matters which *arise under title 11* or *arise in a case under title 11* where the bankruptcy judge may enter final orders or judgments.[1] Non-core proceedings are those which are only *related to a case under title 11* and in these matters the bankruptcy judge may not enter final orders or judgments.[2] *See In re Mankin,* 823 F.2d 1296 (9th Cir.1987) (general discussion of reasons why jurisdictional integrity of bankruptcy court dependent upon core/non-core distinction), *cert. denied,* —— U.S. ——, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988).

In § 157(b)(2) Congress has set out fifteen non-exclusive examples of core proceedings.[3] Courts of appeal in two circuits

---

1. Section 157(b)(1) states that "[b]ankruptcy judges may hear and determine ... all core proceedings arising under title 11, or arising in a case under title 11, ... and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C.A. § 157(b)(1) (West Supp.1988).

2. Section 157(c)(1) provides that, in non-core proceedings, the bankruptcy judge submits proposed findings of fact and conclusions of law to the district court; final orders or judgments are entered by the district judge.

3. 28 U.S.C.A. § 157(b)(2) (West Supp.1988) provides as follows:

(2) Core proceedings include, but are not limited to—
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;

have now held that Congress intended core proceedings to be given the broadest interpretation constitutionally possible. *In re Arnold Print Works, Inc.,* 815 F.2d 165, 168 (1st Cir.1987) ("Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits."); *In re Mankin,* 823 F.2d at 1301 (Legislative history suggests § 157(b) intended to expand "the bankruptcy court's jurisdiction to its constitutional limit.")

The great majority of courts that have considered the issue have ruled that postpetition proceedings, where no cause of action existed on the date of filing of the petition, are core proceedings because they arose "in a case." *See, e.g., In re Arnold Print Works, Inc.,* 815 F.2d at 168 (a debtor in possession's action to recover an account receivable arising out of a postpetition contract is a core proceeding because it is a matter "concerning the administration of the estate" (§ 157(b)(2)(A)) and a proceeding "affecting the liquidation of the assets of the estate" (§ 157(b)(2)(O))); *Pester Refining Co. v. MAPCO Gas Products (In re Pester Refining Co.),* 66 B.R. 801, 817–18 (Bankr.S.D.Iowa 1986) (postpetition action by debtor in possession against prepetition creditor who converted property postpetition is core proceeding), *aff'd on other grounds,* 85 B.R. 520 (S.D.Iowa 1987), *aff'd in part on other grounds and rev'd in part on other grounds,* 845 F.2d 1476 (8th Cir.1988); *J.B. Van Sciver Co. v. William Cooper Assoc. (In re J.B. Van Sciver Co.),* 73 B.R. 838, 843–44 (Bankr.E.D.Pa.1987) (debtor in possession's action

for breach of postpetition real estate sales contract entered into with court approval is a core proceeding); *Sywilok v. Estee Lauder, Inc. (In re Epi–Scan, Inc.),* 71 B.R. 975, 978–80 (Bankr.D.N.J.1987) (action to collect postpetition account receivable is a core proceeding because it arises in case and was not owned by debtor when case commenced); 1 L. King, *Collier on Bankruptcy* ¶ 3.01, at 3–48 (15th ed. 1988) ("The better result is that the [postpetition account receivable] proceeding is core....") [4]

## IV.

The facts of the present matter differ from those on which the above holdings are based only in that some of First Bank's actions occurred during the two months prior to the petition. However, the actions of the banks which allegedly caused the destruction of the debtor's business occurred postpetition, over a period running from January 18, 1984 to August 24, 1984. A fair reading of the complaint indicates that at the date of the filing of the petition, no meaningful cause of action against CNB for damages yet existed that the debtor could assert. The plaintiff's claims center on the postpetition administration of the estate and he concedes as much in his memorandum. "In this case, the creditor upon whom the improper control was exercised was a debtor in bankruptcy, and the bankruptcy proceeding was one of the methods used or threatened to be used to exercise that control." *Plaintiff's Memorandum* at 7. When the postpetition acts complained of heavily dominate in terms of frequency, significance and effect com-

(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

4. For a ruling that a postpetition proceeding to collect a prepetition account receivable is a noncore proceeding, *see Century Brass Products v. Millard Metals Service Center (In re Century Brass Products),* 58 B.R. 838 (Bankr.D.Conn. 1986).

pared to the prepetition acts, a proceeding brought to attach liability based upon the totality of such acts will be considered a core matter.

The plaintiff's argument for finding the proceeding to be a non-core proceeding is that his "cause of action is based upon state law, is not dependent upon the Bankruptcy Code, and is not a proceeding that could arise only in the context of a bankruptcy." *Plaintiff's Memorandum* at 8. The short answer to this contention is that § 157(b)(3) specifically downgrades the factor of state law origin as a determinant in the core/non-core analysis. "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C.A. § 157(b)(3) (West Supp.1988). *See In re Mankin*, 823 F.2d at 1308. (Held: a cause of action for alleged prepetition fraudulent conveyance based upon state law is a core proceeding arising *under* title 11 in light of § 544(b) and § 157(b)(2)(H). "[E]ven though the right here initially arises from state law, because it pertains to a debtor under the protection of the federal bankruptcy laws, the right is as dependent for its existence on federal law as it is on state law.") The plaintiff's arguments for a non-core determination are unpersuasive.

### V.

I recommend to the district court that this adversary proceeding be determined to be a core proceeding arising in a case under title 11.