97 B.R. 721 (1989)
In re M.S.V., INC., Martin Specialty Vehicles, Inc., Debtors.
M.S.V., INC., Martin Specialty Vehicles, Inc., Carole Martin, Plaintiffs,
v.
BANK OF BOSTON, WESTERN MASSACHUSETTS, N.A., Defendant.
Bankruptcy Nos. 86-40095-PWG, 86-40096-PWG, Adv. No. 86-4012-JFQ, Civ. A. No. 88-0150-F.
United States District Court, D. Massachusetts.
March 22, 1989.
*722 Maurice M. Cahillane, Egan, Flanagan and Egan, Springfield, Mass., Francis H. Fox, Richard Mentzinger, Jr., Bingham, Dana & Gould, Boston, Mass., for defendant-appellant.
David Nickless, Nickless & Phillips, Fitchburg, Mass., for plaintiffs-appellees.

MEMORANDUM AND ORDER
FREEDMAN, Chief Judge.

I. INTRODUCTION
Before the Court is defendant-appellant Bank of Boston's ("BOB") lengthy and detailed Appeal from a Final Judgment of the United States Bankruptcy Court for the District of Massachusetts ("Defendant's Appeal"), which challenges Bankruptcy Judge Queenan's conclusion that BOB acted in bad faith in foreclosing on the plaintiffs' *723 property, and which protests Judge Queenan's award to the plaintiffs of $561,597 in damages. Also before the Court are plaintiff-appellee M.S.V., Inc.'s ("MSV")[1] reply ("Plaintiffs' Reply") and BOB's response ("Defendant's Response") thereto.

II. BACKGROUND
In light of the thorough exposition of the facts by Judge Queenan, see M.S.V., Inc. v. Bank of BostonWestern Massachusetts, N.A. (In re Martin Specialty Vehicles, Inc.), 87 B.R. 752 at 756-61 (Bankr. D.Mass.1988) ("M.S.V., Inc."), only a brief sketch is needed here. Relevant facts will be discussed in detail where necessary in the body of the opinion.[2]
This appeal arises out of foreclosure proceedings initiated by BOB against MSV on January 14, 1986, resulting in the cessation of MSV's activities. On February 18, 1986, MSV filed for Chapter 11 status and, on the following day, filed suit against BOB, seeking turnover of the property seized, a preliminary injunction to stop the sale of MSV's assets scheduled for that day, and damages resulting from the foreclosure. The complaint was later amended to include a variety of state law claims. By agreement of the parties, the company's assets were sold on February 19, 1989, and the proceeds placed in escrow pending the outcome of this litigation. M.S.V., Inc., Memorandum (Queenan, B.J.), March 11, 1987, at 2-3 ("Memorandum").
BOB filed for mandatory abstention, arguing that a state court was a more appropriate forum for the civil action. As is discussed in more detail below, Judge Queenan allowed the motion on all but three counts, declaring that it was within his jurisdiction to resolve MSV's requests for turnover, lien determination, and equitable subordination.
Following trial, Judge Queenan issued an opinion which held that while BOB did have a security interest in the corporation's assets, MSV's loans were in fact not in default and BOB acted in bad faith in foreclosing on the plaintiffs' property. Id. As compensation for the loss of their business, Judge Queenan awarded the plaintiffs $561,597.00.

III. DISCUSSION
A. Determining the Boundaries of Count I
The critical part of this appeal focuses on what was encompassed by Count I of MSV's adversary action against BOB, contained in MSV's original complaint, filed on February 19, 1989. After setting forth the facts on which the complaint was based, MSV entreated the Bankruptcy Court that
(1) The Bank of BostonWestern Massachusetts, N.A. and its agents be temporarily restrained from interfering with the plaintiffs' use and possession of their property, books and records;
(2) The Bank of BostonWestern Massachusetts, N.A. and its agents be preliminarily and permanently enjoined from interfering with the plaintiffs' use and possession of their property, books and records;
(3) The Bank of BostonWestern Massachusetts, N.A. and its agents turn over to each of the plaintiffs their individual property;. . . .
Also included in the complaint (and thus apparently in Count I) were various requests for monetary damages. M.S.V., Inc., Verified Complaint for Turnover and Preliminary Injunction at 2-3.
*724 Rejecting BOB's pretrial arguments to the contrary, Judge Queenan ruled that MSV's request for turnover was a "core proceeding" under the express terms of 28 U.S.C. § 157(b)(2)(E) ("Core proceedings include but are not limited to . . . orders to turn over property of the estate;. . . .") M.S.V., Inc., Memorandum at 4. Judge Queenan also ruled that a resolution of the plaintiffs' turnover claim would not violate the somewhat nebulous restrictions placed on non-Article III judges by the Supreme Court in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Id. at 6.
By way of comparison, Judge Queenan concluded that MSV's claims contained in other counts were non-core proceedings. Determining that this district has adopted a narrow definition of what constitutes a "core proceeding," Arnold Printworks, Inc. v. Apkin (In re Arnold Printworks), 61 B.R. 520 (D.Mass.1986),[3] Judge Queenan rejected plaintiffs' assertion that their state law claims (trespass, conversion, interference with advantageous business relations and Mass.Gen.Laws ch. 93A violations) were also "core proceedings." "Related proceedings," he wrote, "do not become core proceedings solely by virtue of the fact that they arise out of the same transaction or occurrence as core proceedings." Memorandum at 8.
In a telephone conference following the five-day trial, Judge Queenan expressed concern that the parties did not understand that MSV's claims for monetary damages under Count I were also before the Bankruptcy Court, and offered to reopen trial to hear evidence on the question. Transcript of Telephone Conference of February 9, 1988, at 2-3. Judge Queenan acceded that it was "debatable" whether or not the question of damages should be before the Bankruptcy Court, but stated that "[the] decision has been made." Id. Attorney Cahillane, counsel for BOB, suggested that Judge Queenan should determine, before reopening trial, whether or not "one [is] entitled to any damages in a turnover complaint over and above simply turn over the property?" Id. at 5. Judge Queenan replied that "[i]t would seem fairly clear to me that [Count I] in its entirety with all of its allegations and all of its request for relief is before the Court." Id. at 6. While noting that Attorney Cahillane was free to file a motion to determine the legal issue, Judge Queenan went on to add that "[t]he count does seem to speak for itself and does indicate otherwise. . . ." Id.
B. Jurisdiction
1. Turnover
There is little disagreement among the various parties that the Bankruptcy Court has jurisdiction to hear and to rule on a motion for turnover. As Judge Queenan correctly noted before trial, authority to resolve such matters is expressly granted by the Bankruptcy Code. See 28 U.S.C. § 157(b)(2)(E) and 11 U.S.C. § 542.
Even prior to the codification of turnover motions in the Code, recognition of such procedures was well-established. As the Supreme Court wrote in 1948,
[C]ourts of bankruptcy have fashioned the summary turnover procedure as one necessary to accomplish their function of administration. It enables the court summarily to retrieve concealed and diverted assets or secreted books of account the withholding of which, pending the outcome of plenary suits, would intolerably obstruct and delay administration.
Maggio v. Zeitz, 333 U.S. 56, 62-63, 68 S.Ct. 401, 404-05, 92 L.Ed. 476 (1948).
Following passage of 11 U.S.C. § 542, the Supreme Court held that even the Internal Revenue Service must turn over a debtor's assets seized to satisfy a tax lien. United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Noting that Congress had included statutory protection for all secured creditors, the Court wrote that "[a]ny other *725 interpretation of 542(a) would deprive the bankruptcy estate of the assets and property essential to its rehabilitation effort and thereby would frustrate the congressional purpose behind the reorganization provisions." Id. at 208, 103 S.Ct. at 2315 (footnote omitted).
It is well-settled, then, that Judge Queenan had the authority to order BOB to turn over to the debtor's estate either the property itself or, given the stipulation of the parties, the proceeds from the sale of the property.
2. Breach of Contract
Still before the Court, however, is the question of whether or not the Bankruptcy Judge had jurisdiction over and authority to decide plaintiff's allegation of wrongful foreclosure against BOB. Although the telephone conference following the main body of the trial left the issue unclear, the Bankruptcy Judge's memorandum makes it evident that he based BOB's liability on a breach of contract theory. For example, Judge Queenan ruled that BOB had "breach[ed] its contractual obligations" to MSV in two respects: (1) the "implied covenant of good faith" and (2) the "obligation to take possession and dispose of collateral only upon the occurrence of a default under its security agreements." M.S.V., Inc., at 767. It is also clear that he awarded damages under the same theory: "[W]here a breach of contract causes an entire suspension in operations, it is appropriate to award the profits that would have been earned during the period of suspension." Id. at 767, citing Narragansett Amusement Co. v. Riverside Park Amusement Co., 260 Mass. 265, 281, 157 N.E. 532 (1927).
Certainly there are circumstances, even post-Marathon, where bankruptcy judges may exercise jurisdiction over and decide claims based on state law. However, such instances are tightly governed by the various and sundry provisions of the Bankruptcy Code. This Court is required to examine assertions of jurisdiction over state law claims with care.

a. Is MSV's Breach of Contract Claim a Core Proceeding?
BOB proclaims that the Bankruptcy Judge has no more authority to decide a breach of contract claim than it did to award monetary damages under a motion for turnover. Defendant's Appeal at 10. Relying on Marathon and the decisions following it, the defendant argues that the Supreme Court has limited the scope of the bankruptcy court's jurisdiction to "core" proceedings. Absent explicit consent by the parties, BOB says, matters outside the "core" jurisdiction must be adjudicated by an Article III court. Defendant's Appeal at 11-15.
In the defendant's view, a "core" proceeding is defined as one which "`invokes a substantive right provided by Title 11 or . . . [which] is a proceeding that, by its nature, could only arise in the context of a bankruptcy case.'" Defendant's Appeal at 15, citing Matter of Wood, 825 F.2d 90, 97 (5th Cir.1987). Alleging that the claim for damages decided by the Bankruptcy Judge was based entirely on a state law contract claim, BOB argues that the plaintiffs' claim cannot be considered a "core" proceeding and that, therefore, the Bankruptcy Judge exceeded his jurisdiction. Id. at 15.
MSV's reply brief does not squarely address the defendant's contentions. Instead, the plaintiff argues that the Bankruptcy Court had jurisdiction to resolve the plaintiffs' claim for damages because the defendant's allegedly wrongful activities took place both before and after the plaintiffs' bankruptcy filing. In support of this proposition, MSV relies exclusively upon Matter of O'Sullivan's Fuel Co., Inc., 88 B.R. 17 (D.Conn.1988). However, while the O'Sullivan's court agreed that some of the wrongful activity took place prior to the filing of the bankruptcy petition, it noted that as of the date of filing, "no meaningful cause of action . . . for damages yet existed." Id. at 20. That was not the case here. Also, the actual holding of the court is much more limited than MSV suggests:
When the postpetition acts complained of heavily dominate in terms of frequency, significance and effect compared to the *726 prepetition acts, a proceeding brought to attach liability based upon the totality of such acts will be considered a core matter.
Id. at 20-21.
O'Sullivan's is not persuasive in this case because, as BOB points out, the only allegedly wrongful conduct engaged in by the defendant took place prepetition. Defendant's Response at 2-3. In fact, on February 19, 1989, the same day that MSV filed its petition with the Bankruptcy Court, BOB auctioned off MSV's assets pursuant to a court-approved stipulation between the parties and placed the proceeds in escrow with the Bankruptcy Court. Id. The Court finds persuasive BOB's argument that Marathon would be trivialized if a breach of contract claim under state law became a core proceeding solely because the alleged wrongdoer failed to remedy the breach postpetition. See Defendant's Response at 3.
The leading authority on the definition of "core" proceedings in this Circuit, In re Arnold Printworks, Inc., 815 F.2d 165 (1st Cir.1987), staunchly supports the conclusion that the breach of contract claim decided by the Bankruptcy Judge is non-core. In Arnold, the First Circuit was faced with a situation in which the debtor, the Print-works, sought to enforce a postpetition contract to purchase printing rollers against George Apkin and Sons. Apkin argued that the contract claim was a state issue, making the procedure non-core, and called on the bankruptcy court to abstain. Id. at 167. The First Circuit disagreed, writing:
The action of a debtor-in-possession to collect a postpetition debt arising from the sale of the estate's assets, unlike a suit to recover a pre-petition debt, falls with the literal wording of 28 U.S.C.A. § 157(b)(2)(A), "matters concerning the administration of the estate," because it involves a claim that arose out of the administrative activities of a debtor-in-possession.
Id. at 168 (citations omitted) (emphasis added); accord 1 King, Collier on Bankruptcy (MB) ¶ 3.01, at 3-41 (15th ed. 1988).
The First Circuit distinguishes Arnold from Marathon in two other important ways, both relevant here. First, the Court of Appeals notes that Marathon and its progeny are concerned with protecting the "traditional" boundaries of Article III court jurisdiction from congressional arrogation. Id. at 169, citing Marathon, 458 U.S. at 64, 102 S.Ct. at 2867 and Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985). Such boundaries do not include non-traditional post-petition contract disputes, which the Court of Appeals indicated have always been within the purview of the bankruptcy courts' summary power. Id., citing Katchen v. Landy, 382 U.S. 323, 337, 86 S.Ct. 467, 476-77, 15 L.Ed.2d 391 (1966).
Second, the Circuit Court found that the concerns for procedural fairness raised in Marathon were satisfied by the circumstances of Arnold:
A party who contracts with an apparently healthy companya company that has not filed a petition in bankruptcymay find it unpleasantly surprising to have to defend its prepetition contract in a bankruptcy court, without a jury or Article III protections. But it is difficult to see any unfair surprise in bringing a post-petition claim before a bankruptcy judge.
Id. at 170 (emphasis in the original).
The language of the First Circuit could hardly be more a propos to the case at hand. The case before this Court involves a breach of contract dispute which arose almost exactly a month before MSV filed its petition with the Bankruptcy Court. Likewise, at the time that BOB loaned the various sums in question to the plaintiffs, it was dealing with an ostensibly healthy member of the business community. There was no suggestion that making such loans would require BOB to litigate potential disputes in the Bankruptcy Court. To require BOB to do so now would be a clear violation of the concern for procedural fairness inherent in Article III. See Crowell v. Benson, 285 U.S. 22, 87, 52 S.Ct. 285, 306, 76 L.Ed. 598 (1932) (Brandeis, J., dissenting).

*727 b. The Bankruptcy Court did not have Consent to Hear the Breach of Contract Claim as a Related Proceeding
Even if a particular claim does not fall within the definition of a "core" proceeding, Congress has provided bankruptcy courts with the means to resolve disputes which are "related" to core proceedings. See 28 U.S.C. § 157(c)(2). Neither party seriously disputes that the plaintiffs' breach of contract is "related" to MSV's Title 11 proceeding within the meaning of the statute.[3] The statute states that before the Bankruptcy Judge may assert jurisdiction over a related proceeding, he must have "the consent of all the parties to the proceeding." Id. That is the pivotal question in this debate.
MSV argues that the requisite consent need not be express; instead, it may be inferred by "any act indicating a willingness to have the bankruptcy court determine the issue." Plaintiffs' Reply at 12, citing In re Baldwin United, 48 B.R. 49, 54 (Bankr.S.D.Ohio 1985). A willingness to submit to jurisdiction, MSV says, may be found where "the losing party failed to make a timely objection to the court's exercising jurisdiction."
The plaintiff is convinced that the facts of this case clearly illustrate that BOB consented. Specifically, MSV points to the telephone conference conducted after the trial, in which Judge Queenan stated that if BOB wanted to challenge his assertion of jurisdiction by motion, it was free to do so. Plaintiffs' Reply at 13, citing Transcript of Telephone Conference of February 8, 1988, at 6. Instead of doing so, MSV alleges, BOB waited until after an adverse ruling by the Bankruptcy Judge before contesting jurisdiction. MSV also claims that BOB's post-trial motion did not, in fact, challenge the Bankruptcy Judge's jurisdiction, but instead was limited to a discussion of whether or not Count I included any claim for damages. Plaintiffs' Reply at 13-14.
BOB challenges MSV's interpretation of both the law and the facts. While admitting that some courts have inferred consent, BOB stresses that they have done so only when a party's conduct is unequivocal. Defendant's Reply at 5-6. Moreover, BOB suggests, implied consent does not meet the constitutional concerns raised in Marathon; accordingly, some courts have found that explicit consent to jurisdiction is preferable and should be placed on the record. Id. at 6 and cases cited. BOB also points to the 1987 amendment of the Bankruptcy Rules, which requires in part that both parties must expressly consent before a bankruptcy judge may exert jurisdiction. Id., citing Bankruptcy Rule 7008(a) and 7012(b).[4]
Lacking applicable case law in this Circuit, the Court has reviewed the authorities cited by each party. Of those, the Second Circuit opinion in In re Men's Sportswear, Inc., 834 F.2d 1134 (2d Cir.1987), is the most persuasive. As MSV notes, the case does state that a failure to object to the Bankruptcy Court's assertion of jurisdiction over a "related" proceeding constitutes consent to the final adjudication of the controversy. Id. at 1137-38.
One important distinguishing characteristic of In re Men's Sportswear, Inc., however, *728 is that the complaining party failed to challenge the assertion of jurisdiction at any time, including both the proceedings before the bankruptcy and the district court. Id. at 1138. In this case, BOB made its objection to jurisdiction known from the start, and obviously has raised concerns about jurisdiction before this Court. Specifically, the Court finds that BOB formally objected in its Answer (¶¶ 5, 7), its Motion for Abstention, orally during the Telephone Conference, in its Post-trial Motions, and in its Appeal to this Court. While BOB in fact should have filed a written motion objecting to the reopening of the trial to hear evidence on damages, its failure to do so is not fatal in light of the numerous other times during the course of the litigation in which BOB has raised this argument.
The Court is even more reluctant to infer consent to jurisdiction here in light of the concerns raised in Marathon. Absent extenuating circumstances, such as consent, "the power to adjudicate private rights, such as the right to recover contract damages, cannot be lodged in a court lacking `the essential attributes of the judicial power.'" In re Men's Sportswear, Inc., 834 F.2d at 1138, citing Marathon, 458 U.S. at 87, 102 S.Ct. at 2880. Given the circumstances of this case, the Court does not feel that it is appropriate to infer BOB's consent to the bankruptcy court's jurisdiction over MSV's "related" breach of contract claim.
C. Damages
BOB asserts that turnover is limited to the return of tangible property, a definition which does not include an award of damages by the Bankruptcy Court. Defendant's Appeal at 8-9, citing Acolyte Electric Corp. v. City of New York, 69 B.R. 155, 168-69 (E.D.N.Y.1986).
The plaintiffs' position, unchallenged by the defendant, is well supported by authority, including cases arising before the enactment of section 542(b). For example, in an instance where a trustee in bankruptcy sought a summary turnover order against a bank no longer in possession of the disputed property, the Second Circuit concluded that what the trustee was actually looking for was an order directing the bank to pay damages for unlawful conversion of chattels. In re 671 Prospect Avenue Holding Corporation, 118 F.2d 453, 454 (2d Cir.1941). The Second Circuit ruled that the trustee's request ran counter to the "established rule that a turn-over order will not be made unless the party proceeded against still has possession of the specific property sought to be recovered as part of the bankrupt's estate." Id. at 455 (citations omitted). As a result, the Second Circuit ruled that the order was "inappropriate when damages for tort are the matter in dispute." Id.
More recent cases, decided under the aegis of section 542, have taken the same position. In the case of Matter of Chick Smith Ford, Inc., 46 B.R. 515 (Bankr.M.D. Fla.1985), the debtor, an authorized Ford dealer, filed two motions against Ford. Among the various claims set forth in the motions were requests that Ford turn over certain sums of money which the debtor claimed were owed to it, and that the Bankruptcy Court award damages based on Ford's activity. Id. at 516.
Turning to the Ford dealer's reliance on section 542(b), the Bankruptcy Court agreed that Congress did intend to authorize the turning over of funds to a debtor. However, the Court added, Congress limited the scope of section 542(b) to "funds which [are] not in dispute but which [are] only subject to a possible setoff under [section] 553 of the Code." Id. at 518. As the Bankruptcy Court adroitly summarized the situation:
[T]o extend the proposition urged by the Debtor would mean that a Debtor may collect, by way of mandatory injunction, disputed claims to monies, claims based strictly on state law which are unliquidated and contingent. Certainly such a procedure could not be sanctioned outside bankruptcy and there is no just reason why it should be sanctioned just because the entity seeking to collect disputed funds happens to be a Debtor under the Bankruptcy Code. To approve *729 the proposition urged by the Debtor would be without a doubt, a gross violation of the most basic concepts of due process to which every Defendant is entitled, which involves at least the right to enjoy all the procedural safeguards otherwise available to all litigants in civil litigation.
Id. Similarly strong sentiments may be found in the case of In re Shaford Companies, Inc., 52 B.R. 832 (Bankr.D.N.H.1985). The Shaford Companies argued that their demand for royalties due under a disputed franchise agreement constituted a "turnover" proceeding as set forth in sections 542 and 157(b)(2)(E). Id. at 834. The court dismissed such a construction as tending to "remove any distinction between core and non-core proceedings for purposes of bankruptcy court jurisdiction." Id. "Any cause of action," the court added, "could be construed as a turnover in that sense." Id.; see In re Arthur Treacher's Franchise Litigation, 689 F.2d 1137 (3rd Cir. 1982) (a preliminary injunction which awarded the payment of monies when the underlying contract was in dispute violated the very purpose of equitable relief).
In the case of In re FLR Company, Inc., 58 B.R. 632 (Bankr.W.D.Pa.1985), the debtor FLR Company sought to recover progress money payments under certain contracts it had with Bethlehem Steel Corporation. The Bankruptcy Court analogized the motion for turnover as "similar to an injunction for specific performance . . ." and concluded that it would be inequitable to order payment while other aspects of the contracts were in dispute, particularly since FLR had not succeeded in offering assurances of adequate protection to Bethlehem. Id. at 634.
This Court finds itself in complete agreement with the cases discussed. There is no room within a motion for turnover for the award of monetary damages. The preliminary nature of the motion and the clear limits inherent in the statutory language restrict the Bankruptcy Judge's authority to orders directing return of undisputed property or monies. The Court notes that in this instance, BOB has already turned over to the Bankruptcy Court the proceeds of the sale of the plaintiffs' property. That exhausts the Bankruptcy Court's authority to act under Count I of the complaint.

IV. CONCLUSION
To summarize, the Court makes the following findings:
1. Plaintiffs' Count I constituted a claim for turnover, over which the Bankruptcy Court has jurisdiction pursuant to 11 U.S.C. § 542.
2. A motion for turnover is limited to the return of specific property which the debtor or trustee of a bankrupt may use in the settlement of the claims of creditors. Monetary damages for as yet unliquidated claims (such as breach of contract) may not be awarded under a motion for turnover.
3. Plaintiffs' Count I also included an allegation of breach of contract for wrongful foreclosure against the defendant. Although a state law claim, the Bankruptcy Court may decide the issue if both parties consent.
4. The defendant did not consent to the Bankruptcy Court's jurisdiction and, thus, the award of damages under the breach of contract theory was improper.
In light of this Court's ruling that the Bankruptcy Court did not have jurisdiction to award the contested damages, there is no need to proceed further into a substantive discussion of the breach of contract claim. Nothing in this Court's opinion shall be construed as ruling in favor of either the plaintiff or the defendant on the merits of the plaintiffs' breach of contract claim.
The Bankruptcy Court's award to the plaintiffs of $561,597.00 is hereby REVERSED. There being no objection to the remainder of the Bankruptcy Court's opinion, this case is REMANDED to the Bankruptcy Court for proceedings not inconsistent herewith.
It is So Ordered.
NOTES
[1] For the sake of simplicity, the three plaintiff-appellees will be referred to collectively as "MSV."
[2] One issue is appropriately put to rest at this time. MSV argues that BOB failed to include an appropriate statement of facts in its appeal brief. Plaintiffs' Reply at 21. As a result, MSV contends, the defendant should be treated as having adopted the Bankruptcy Judge's findings of fact. Id. at 22. This Court disagrees. By including explicit references to the record in support of each allegation contained in the appeal brief, BOB has amply complied with the spirit, if not the letter, of Bankruptcy Rule 8010(a)(1)(D). Given the involved nature of this case, a separate section setting forth the facts would have been unnecessarily duplicative and would have added to the already imposing length of the appellant's submission.
[3] The District Court's opinion was vacated by the First Circuit in Arnold Printworks, Inc. v. Apkin, 815 F.2d 165 (1st Cir.1987). See discussion infra. It is unclear to this Court why the Bankruptcy Court continues to rely on a vacated case.
[3] The lack of controversy may result from confusion about which theory governed the award of damages. In the memorandum in which he rejected BOB's abstention request, Judge Queenan made it clear that the claim before him was for turnover, and not a "related" breach of contract claim.

The Plaintiffs have not attempted to fit a related proceeding into the definition of a core proceeding. The turnover request in Count I is clearly based on [section] 542 and thus arises under bankruptcy law. The Plaintiffs seek to recover tangible assets, not payments due to them under a contract or payment on claims owned by them as of the petition date.
M.S.V., Inc., Memorandum at 6 (citation omitted). Having determined that a motion for turnover does not support the kind of damages awarded here, this Court's analysis could arguably have stopped. However, because a breach of contract claim (under which Judge Queenan apparently did award damages) may be a "related" proceeding, this Court must determine if Judge Queenan had the consent of both parties to render a decision on the matter.
[4] As BOB correctly points out, the amendments apply only to cases filed on or after August 1, 1987. However, the Court does, in fact, find them indicative of a general attitude regarding the issue of implied consent.