**I.G. DAVIS, Jr., Plaintiff,**

v.

**THE MERV GRIFFIN COMPANY and Merv Griffin, Defendants.**

**Civ. A. No. 90–496 (JFG).**

United States District Court,
D. New Jersey.

Jan. 29, 1991.

Miller Marvin Dunham Doering & Schreiber by Peter F. Marvin, Valerie J. Munson, Philadelphia, Pa., Gendel, Raskoff, Shapiro & Quittner by Louis Kempinsky, Los Angeles, Cal., for The Griffin Co. and Merv Griffin.

Dilworth, Paxson, Kalish & Kauffman by Bruce W. Kauffman, Thomas J. Foley, III, Lawrence G. McMichael, West Atlantic City, N.J., for I.G. Davis, Jr.

## MEMORANDUM OPINION AND ORDER

GERRY, Chief Judge.

On February 26, 1990, this court entered an order pursuant to 28 U.S.C. § 157 refer-

ring this case to the Bankruptcy Court. Thereafter plaintiff filed a motion in this court for reconsideration and for withdrawal of the reference of the case to the Bankruptcy Court. For the reasons stated in our letter opinion, dated June 21, 1990, this court denied that motion without prejudice so as to allow plaintiff to refile his motion to remand before the Bankruptcy Court, which was then to file a report and recommendation to this court in accordance with Bankruptcy Rule 9027(e).

Plaintiff did in fact file a motion to remand with the Bankruptcy Court, and that Court has now submitted its report and recommendation. *See I.G. Davis, Jr. v. The Griffin Company, et al.*, Civil Action No. 90–496, Report and Recommendation To The United States District Court For The District Of New Jersey Pursuant To Bankruptcy Rule 9027(e), dated September 20, 1990. Our review of that report and recommendation is governed by Bankruptcy Rule 9033(d) which provides that:

The district judge shall make a de novo review upon the record ... of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

No objections were filed by the parties. In such a case, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *See* Bankruptcy Rule 9033 advisory committee note (adopting de novo review provisions of Federal Rule of Civil Procedure 72(b), as elucidated by the advisory committee notes on that rule). Having reviewed the report and recommendation, this court is satisfied that there is no clear error on the face of the record. Therefore, we accept the Bankruptcy Court's findings of fact and conclusions of law, and adopt its recommendation that this action be remanded from that court to this court.

Accordingly, having considered the submissions and for good cause shown, it is on this 28th day of January, 1991, hereby ORDERED that this action be remanded from the Bankruptcy Court to this court.

UNITED STATES
BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

In re Resorts International, Inc., Resorts International Financing, Inc.; Griffin Resorts Holding, Inc., Griffin Resorts, Inc., Debtors

I.G. Davis, Jr., Plaintiff

vs.

The Griffin Company and Merv Griffin, Defendants

Chapter 11

Case No. 89–10119RG

Case No. 89–10120RG

Case No. 89–10461RG

Case No. 89–10462RG

Adversary No. 90–1033RG

September 21, 1990

REPORT AND RECOMMENDATION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY PURSUANT TO BANKRUPTCY RULE 9027(e)

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

Pursuant to Bankruptcy Rule 9027(e), this Court makes the following report and recommendation to the United States District Court for the District of New Jersey.

Before this court is a motion entitled "Notice Of Plaintiff's Motion For Reconsideration And Withdrawal Of The Reference Of This Action To the United States Bankruptcy Court." This motion was filed on June 29, 1990 on behalf of plaintiff, I.G. Davis, Jr. ("plaintiff" or "Davis") in connection with adversary proceeding No. 90–1033, entitled *I.G. Davis, Jr. v. The Griffin Company and Merv Griffin.* In a Letter

Opinion by the Honorable John F. Gerry, Chief Judge of the United States District Court for the District of New Jersey, filed on June 21, 1990, plaintiff was advised to refile its motion to remand before the bankruptcy court and this court was directed to prepare a report and recommendation to the United States District Court for the District of New Jersey in accordance with Bankruptcy Rule 9027(e).

As a preliminary matter, this court briefly addresses an issue which was raised by the parties in their pleadings; specifically, whether this motion is correctly framed as a notice of motion pursuant to 28 U.S.C. § 157(d) for reconsideration and withdrawal of the reference or whether this motion despite its caption is a motion for remand under Bankruptcy Rule 9027(e). As noted earlier, Chief Judge Gerry in his letter opinion advised the plaintiff to refile its motion to "remand" and directed this court to prepare a report and recommendation pursuant to Bankruptcy Rule 9027(e).[1]

Initially, this court will address the procedural questions raised by the parties.

The plaintiff asserts that the defendants have improperly interpreted plaintiff's motion for reconsideration and withdrawal of the reference under 28 U.S.C. § 157(d)[2] as a motion to remand pursuant to Bankruptcy Rule 9027(e). The defendants on the other hand take the position that Plaintiff's motion for reconsideration and withdrawal of the reference pursuant to 28 U.S.C. § 157 has been filed in disregard of Chief Judge Gerry's letter opinion in which the plaintiff was advised to refile a motion to "remand" in accordance with rule 9027(e) before this court.

Plaintiff's state court action was removed from the Superior Court of New Jersey to the United States District Court of New Jersey pursuant to title 28, § 1441, the general removal statute,[3] by a Notice of Removal dated February 16, 1990 filed by defendants, The Griffin Company ("TGC") and Merv Griffin ("Griffin").

By motion also dated February 16, 1990, the defendants sought an order of the district court referring this action to the United States Bankruptcy Court for the District of New Jersey pursuant to 28 U.S.C. § 1452[4] and Bankruptcy Rule 9027.

By order of the district court dated February 20, 1990, the district court, referred this action to the bankruptcy court pursu-

---

1. Bankruptcy Rule 9027(e) provides:

(e) Remand. A motion for remand of the removed claim or cause of action shall be filed with the clerk and served on the parties to the removed claim or cause of action. Unless the district court orders otherwise, a motion for remand shall be heard by the bankruptcy judge, who shall file a report and recommendation for disposition of the motion. The clerk shall serve forthwith a copy of the report and recommendation on the parties. Within 10 days of being served with a copy of the report and recommendation, a party may serve and file with the clerk objections prepared in the manner provided in Rule 9033(b). Review by the district court of the report and recommendation shall be governed by Rule 9033.

2. Section 157(d) of Title 28 of the United States Code provides:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

3. Title 28, § 1441(a) provides in part:

**§ 1441 Actions removable generally**
(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State Court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

4. 28 U.S.C. § 1452(a) provides:

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's policy or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

ant to 28 U.S.C. § 157.[5]

On or about March 6, 1990, plaintiff moved before the District Court for Reconsideration and/or Withdrawal of the Reference of this Action to the United States Bankruptcy Court. The district court, by the Honorable John H. Gerry, Chief Judge, construed the withdrawal motion as a motion seeking "a remand of plaintiff's claims against TGC and Griffin from the bankruptcy court to [the District] Court." (*See* June 21, 1990 Letter Opinion, p. 2). The district court denied plaintiff's motion without prejudice and directed plaintiff "to refile its motion to remand before the Bankruptcy Court, which shall prepare a report and recommendation in accordance with Bankruptcy Rule 9027(e)." (*See* June 21, 1990 Letter Opinion, p. 3).

In the case of *In re Oneida Motor Freight, Inc.* ("Oneida"), 86 B.R. 344 (Bankr.D.N.J.1987), Debtor, a motor common carrier and its approved agent brought three adversary complaints seeking to collect alleged freight undercharges for prepetition services. Defendants in each adversary matter moved before the bankruptcy court seeking alternative relief including the court's abstention from hearing the adversary complaint or the dismissal of the complaint or for the entry of a stay and referral of this dispute for further hearing before the Interstate Commerce Commission. As part of the court's holding, the Honorable William F. Tuohey, a bankruptcy judge in this district held that the bankruptcy court did not have jurisdiction to consider the motion to withdraw the general reference of the matter to the District Court pursuant to 28 U.S.C. § 157(d).[6] *Oneida*, 86 B.R. at 346. Judge Tuohey observed that both 28 U.S.C. § 157(d) and the July 23, 1984 Order of Reference entered by the United States District Court for the District of New Jersey by their express terms authorize only the District Court to withdraw the reference of any matter pending before the bankruptcy

court. *Id.* at 346–47 (*citing Interconnect Telephone Services, Inc. v. Farren*, 59 B.R. 397 (Bankr.S.D.N.Y.1986)). *Accord In the Matter of Hawkeye Chemical Co.*, 73 B.R. 318, 320 (Bankr.S.D.Iowa 1987). In light of the express language of 28 U.S.C. § 157(d), and the District of New Jersey Order of Reference and *Oneida*, it is clear that a motion to withdraw the reference of a case to the bankruptcy court is the sole province of the district court.

The plaintiff relies upon the cases of *Oneida* and *In re Blackman*, 55 B.R. 437 (Bankr.D.C.1985) in seeking a withdrawal of the reference to the bankruptcy court under 28 U.S.C. § 157(d) rather than "remand" pursuant to Bankruptcy Rule 9027(e). In *Blackman*, the debtors filed an adversary proceeding in the Bankruptcy Court in connection with their related bankruptcy case and then sought to have the proceeding remanded to the district court. *In re Blackman*, 55 B.R. at 439. The Bankruptcy Court denied plaintiffs' motion to remand on grounds that "... they have requested the wrong relief from the wrong judge for the wrong reason." *Blackman*, 55 B.R. at 439.

The *Blackman* court observed that plaintiffs' "Motion To Remand Adversary Proceeding To District Court For Order Directing Jury Trial," could not be "remanded" to the District Court because it had originally been filed with the Bankruptcy Court and had never been pending before the District Court except by the "legislative legerdemain." *Blackman*, 55 B.R. at 439.

In this regard, the *Blackman* court stated:

All bankruptcy cases and proceedings have been "referred" to the undersigned "unit" by an order of the District Court pursuant to Title 28 U.S.C. § 157(a). In that limited sense this proceeding is already pending and has always been pending before the District Court and hence cannot be remanded there. In other

**5.** 28 U.S.C. § 157(a) provides:
(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

**6.** *See* Note 2.

words, either this adversary proceeding has never been pending before the District Court or else it is now and always has been pending before the District Court; in either event, a "remand" to the District Court is logically impossible.

Rather than seeking a "remand" the plaintiffs should ask that the reference of this adversary proceeding from the District Court to this Court be withdrawn, under Title 28 U.S.C. § 157(d). A motion to withdraw the reference should be filed in the Bankruptcy Court Clerk's Office, and it will then be referred by the Clerk of the Bankruptcy Court to the Civil Division of the District Court, for consideration by a United States District Judge, rather than by the undersigned Bankruptcy Judge.

*Blackman,* 55 B.R. at 440.

There are several notable differences between *Blackman* and the instant case. In the instant case, Davis's action although not originally filed with the district court, was removed to the district court on the defendants' motion pursuant to 28 U.S.C. § 1441 based on grounds of diversity of citizenship. The action in *Blackman* was originally filed with the bankruptcy court and unlike the instant matter it was not the subject of a removal action from state court to the district court pursuant to § 1441. Second, the instant matter was removed from state court to the district court and then was referred to the bankruptcy court. The procedural history in this case is distinguishable from the *Blackman* case where the adversary proceedings were never filed before the district court except by way of original jurisdiction pursuant to 28 U.S.C. § 1334.

The defendants rely upon a number of cases which by application they assert present a case for remand pursuant to Bankruptcy Rule 9027(e) rather than a motion to withdraw the reference pursuant to 28 U.S.C. § 157(d).

The defendants rely upon the case of *In re Marathon Home Loans,* 96 B.R. 296 (E.D.Cal.1989) ("*Marathon Home* ") in support of their proposition that plaintiff has

failed to follow Chief Judge Gerry's directives under Bankruptcy Rule 9027(e).

In the *Marathon Home* case, the matter before the district court involved the review of a Bankruptcy Court's report and recommendation pursuant to Bankruptcy Rule 9027 in connection with a motion for remand to a California state court of a multi-defendant civil action based on theories of fraud, tort and statutory violations. The matter had been removed by the Chapter 11 trustee of one of the defendants, a debtor, Marathon Homes. In *Marathon Home,* the trustee had removed the plaintiff's state court action directly to the bankruptcy court pursuant to 28 U.S.C. § 1452(a), thus by-passing the filing of the action with the district court. By comparison, the procedural history in *Marathon Home* is distinguishable from the instant case as the instant matter was removed to the district court based on diversity and only after a motion by defendants to refer the matter to the bankruptcy court was the matter referred by Chief Judge Gerry.

Noteably in the instant case, jurisdiction in this matter was obtained by this court pursuant to a different series of procedural steps. In the case before this court, plaintiff's action was removed to the district court not to the bankruptcy court pursuant to 28 U.S.C. § 1441, the general removal statute based on diversity of citizenship. Unlike the scenario in *Marathon Home,* defendants Griffin and TGC made a motion seeking the referral of the matter to this court which was granted by Chief Judge Gerry in the District Court Order of June 21, 1990 pursuant to 28 U.S.C. § 157.

■ The *Marathon Home* case illustrates the utility and application of the remand procedure under 9027(e). Removal directly to the Bankruptcy Court pursuant to 28 U.S.C. § 1452(a) is reversible by the mechanism of remand pursuant to 28 U.S.C. § 1452(b). Section 1452 provides in relevant part:

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such gov-

ernmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise.

A motion to remand a case removed pursuant to the above section is filed in the bankruptcy court and determined pursuant to 9027(e) which provides that the district court issues a final determination of whether to remand based upon a review of a report and recommendation prepared by the bankruptcy court. *See* Bankruptcy Rule 9027(e). *See also Marathon Home*, 96 B.R. at 298.

*Marathon Home* illustrates that remand is appropriate in circumstances where the matter has been removed directly to the bankruptcy court by 28 U.S.C. § 1452. *In re Blackman*, 55 B.R. at 439; *Marathon Home*, 96 B.R. at 299.

A removed claim or cause of action may be remanded "on any equitable ground" by way of a motion to remand. *See In re Marathon Home Loans, supra* 96 B.R. at 299, *citing* 28 U.S.C. § 1452(b). As noted by the *Marathon Home* court:

A motion to remand is also the appropriate procedural vehicle for a party to test whether a claim or cause of action has been improperly removed and for testing jurisdiction over the removed matter. *In*

*re Princess Louise Corp.*, 77 B.R. 766, 771 (Bankr.C.D.Cal.1987). The decision on the question of remand is "not reviewable by appeal or otherwise." 28 U.S.C. § 1452(b).

The "any equitable ground" needed for remand subsumes both the usual considerations of fairness, economy, and common sense and, albeit uncomfortably, the procedural and jurisdictional grounds for granting a motion to remand. The traditional grounds include: forum nonconveniens; judicial economy; prompt, final resolution of disputes; respect for state courts on issues of state law; and the expertise of the court in which the matter was pending originally. *See* 1 L. King, Collier on Bankruptcy ¶ 3.01[g]. The more technical grounds include, for example, untimely removal or lack of proper basis for removal. 1A J. Moore & B. Ringle, Moore's Federal Practice ¶ 0.171; Bankr.Rule 9027(a).

*Id.* at 299–300.

In the case of *In re Princess Louise Corp.*, 77 B.R. 766 (Bankr.C.D.Cal.1987), the bankruptcy court was similarly faced with the issue of the scope of removal pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027(e). In that case, the debtors, previous owners of a former cruise ship operation, obtained the removal of certain actions from a California state court directly to the federal bankruptcy court pursuant to 28 U.S.C. § 1452(a). The procedural frame work in the *Princess* case was as follows: the state court action was removed to the District Court pursuant to § 1452(a) based upon jurisdiction under § 1334.[7] Pursuant to §§ 1334(b), 1452, and

---

7. 28 U.S.C. § 1334 provides:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in

the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such pro-

157(a) the matter was referred from the district court to the bankruptcy court pursuant to general orders referring to the bankruptcy court all matters within the scope of § 157(a). *Id.* The *Princess* court stated, "where such an order is in effect, removal is made directly to the bankruptcy court." (Footnote omitted). *Princess Louise*, 77 B.R. at 768.

The *Princess* court observed the difference between the scope of removal pursuant to 28 U.S.C. § 1452(a) and the general removal statute under 28 U.S.C. § 1441 which governs removal from a state court to a federal district court, and stated in this regard:

> The language of section 1452, the bankruptcy removal statute, is different from the language of 28 U.S.C. § 1441 (1973 & Supp.1987), which governs removal from a state court to a federal district court....

In referring to 28 U.S.C. § 1441(a), the court noted:

> The language of this statute relates to "any civil action." In contrast, removal to the bankruptcy court under section 1452(a) extends to "any claim or cause of action in a civil action." ...

> \*　\*　\*　\*　\*　\*

> The language of section 1452(a) is also rather different from that contained in 28 U.S.C. § 1441(c) (1973), which provides:

> > Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

While the language of section 1441(c) may be read to permit the removal of part of an action, case law interpreting section 1441 establishes that only the entire state court case may be removed to a federal district court under section 1441. *See e.g., Allman v. Hanley,* 302 F.2d 559, 562 (5th Cir.1962); *Lowe v. Jacobs,* 243 F.2d 432, 433 (5th Cir.1957), *cert. denied,* 355 U.S. 842, 78 S.Ct. 65, 2 L.Ed.2d 52 (1957); *see generally,* 14A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* 403–04 (2d ed. 1985).

*Princess Louise,* 77 B.R. at 768.

This court finds Chief Judge Gerry's letter opinion to be clear in its directive to the Bankruptcy Court. The letter opinion filed on June 21, 1990 states that the motion filed before the district court was dismissed without prejudice, and that plaintiff was advised to refile "... its motion to remand before the Bankruptcy Court." The letter opinion further provided that this court should prepare a report and recommendation in accordance with Bankruptcy Rule 9027(e). Accordingly, the within constitutes this court's report and recommendation pursuant to Bankruptcy Rule 9027(e).

On October 19, 1989, plaintiff filed a complaint against Resorts International, Inc. ("Resorts"), Merv Griffin ("Griffin") and The Griffin Company ("TGC") in the Superior Court of New Jersey, Law Division, Atlantic County, docket No. ATL–L–005–075–89. The complaint alleges *inter alia* causes of action for breach of contract and wrongful termination of employment. Specifically, the complaint alleges that plaintiff was employed by Resorts for over twenty-eight years and during the course of his employment he held various positions as president, chief operating officer and chief executive officer, and as a member of the Resorts's board of directors. The gra-

---

ceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as

such section applies to an action affecting the property of the estate in bankruptcy.

(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

vamen of plaintiff's allegations is that on September 16, 1989, the Resorts's inside directors acting under "Griffin's domination and control and at his direction, arbitrarily and without cause unlawfully purported to terminate Davis's employment, thereby attempting to cause a forfeiture of his remaining salary, pension rights and other benefits" under the plaintiff's Employment Agreement and certain retirement plans. (Plaintiff's Complaint, page 6). Plaintiff's complaint alleges that Griffin was the underlying force which brought about plaintiff's termination.

Plaintiff's complaint, Count I, alleges a cause of action for breach of contract against each of the named defendants, Resorts, Griffin and TGC. Count I alleges that plaintiff's termination was caused solely by the inside directors dominated and controlled by Griffin. (Plaintiff's Complaint, page 7, para. 34).

Count II of plaintiff's complaint alleges a cause of action for breach of contract and violation of N.J.S.A. § 34:11–4.1, *et seq.*, the New Jersey Wage Payment Law based on Resorts's failure to pay Davis for the week ending September 16, 1989.

Count III alleges a cause of action for equitable estoppel against each of the named defendants based upon alleged promises by Resorts to plaintiff that Davis's salary and all benefits including his pension benefits would continue through July 21, 1990 and thereafter as long as he did not seek other employment in the industry.

Count IV alleges that each of the defendants have breached implied covenants of good faith and fair dealing by terminating Davis without cause. Count V alleges a cause of action for wrongful discharge against each of the defendants.

Count VI alleges a cause of action for tortious interference with contract against TGC and Griffin. This count alleges that TGC and Griffin controlled and dominated the inside directors causing them to terminate Davis' Employment Agreement without cause.

Count VII alleges a cause of action for negligent infliction of economic harm against TGC and Griffin. Plaintiff alleges that the defendants by their negligence and unlawful management of Resorts caused serious economic harm to Davis.

Count VIII of plaintiff's complaint seeks a declaratory judgment against all defendants pursuant to N.J.S.A. § 2A:16–50, *et seq.* declaring, *inter alia*, that Davis' Employment Agreement and a certain pension plan was invalidly terminated, and that Davis' rights under those contracts remain in full force and effect. A jury trial was demanded by the plaintiff on these claims.

On November 12, 1989, an involuntary petition under Chapter 11 of the United States Bankruptcy Code was filed against Resorts in this court, docket no. 89–10119. On December 22, 1989, Resorts consented to the entry of an Order for Relief.[8] The plaintiff alleges that on November 13, 1989, counsel for Resorts notified both the New Jersey Superior Court and plaintiff's counsel that the action against Resorts was automatically stayed under 11 U.S.C. § 362(a)(1).

On December 22, 1989, plaintiff filed in the Superior Court of New Jersey a motion entitled "Motion For Severance of Claims Against Resorts" pursuant to New Jersey Civil Practice Rule 4:38–2(a) in order to proceed with its action against Griffin and TGC without delay from the Resorts's bankruptcy proceeding. On January 19, 1990, the New Jersey Superior Court, Atlantic County entered an order severing all

---

**8.** On November 12, 1989, an involuntary petition under Chapter 11 was also filed against Resorts International Financing, Inc. ("RIFI"). On December 22, 1989 RIFI consented to the entry of an order for relief pursuant to Chapter 11 of the Bankruptcy Code. On that same date Griffin Resorts, Inc., ("GRI") and Griffin Resorts Holding Inc. ("GRH") filed separate voluntary petitions under Chapter 11. By order entered by this Court on August 28, 1990, the Debtors' Second Amended Joint Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code, dated May 31, 1990, submitted by Resorts International, Inc., RIFI, GRI, GRH, together with Resorts International Hotel Inc., Griffin Resorts Holding Inc. (formerly known as The Griffin Company), and Merv Griffin was confirmed.

claims asserted against Resorts from those asserted against Griffin and TGC and directing that plaintiff's action proceed against TGC and Griffin.

On February 16, 1990, this action was removed by Defendants Griffin and TGC to the United States District Court for the District of New Jersey pursuant 28 U.S.C. § 1441, 28 U.S.C. § 1446 and Rule 81(c) of the Federal Rules of Civil Procedure, on the grounds that the severance order created complete diversity as between the plaintiff and the remaining defendants for purposes of 28 U.S.C. § 1332(a)(1).[9] This action was not removed from the state court directly to the bankruptcy court pursuant to 28 U.S.C. § 1452(a).[10] On the same date, defendants Griffin and TGC filed a motion seeking the referral of this action from the district court to the bankruptcy court pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027. On February 20, 1990, this action was referred to this court by the District Court's order pursuant to 28 U.S.C. § 157.

On March 6, 1990, the plaintiff filed a motion in the District Court requesting the reconsideration and/or withdrawal of the reference of this matter to this court as ordered by the District Court on February 20, 1990.

On June 14, 1990, attorneys for plaintiff, I.G. Davis, Jr. filed a proof of unsecured claim against Resorts in the approximate amount of $8,000,000.00 for salary, vested accrued retirement benefits, unreimbursed corporate expenses and an undetermined amount in stipulated health and insurance benefits. The proof of claim states in pertinent part that the basis for the claim is the cause of action filed in the Superior Court of New Jersey, Atlantic County in October 1989 by Davis against Resorts, Griffin and TGC.

On June 21, 1990, Chief Judge Gerry entered an order dismissing without prejudice plaintiff's motion for reconsideration and withdrawal of the reference. In the letter opinion issued by Chief Judge Gerry on June 21, 1990, the District Court advised plaintiff to refile its motion to remand before the Bankruptcy Court and instructed this court to file a report and recommendation in accordance with Bankruptcy Rule 9027(e) (Civil No. 90–496(JFG)).

On June 29, 1990, the plaintiff filed with the United States Bankruptcy Court, a motion for reconsideration and withdrawal of the reference of this action to the United States Bankruptcy Court.

A hearing was conducted before this Court in this matter on July 16, 1990. Merv Griffin has filed a proof of claim in the Resorts' bankruptcy proceeding. This proof of claim provides in relevant part:

As a director and officer of Resorts International, Inc. ("Resorts"), Merv Griffin ("MG") is entitled under section (20(A) of the FIFTH Article of Resorts' Restated Certificate of Incorporation, as amended by certificate of amendment recorded June 15, 1987 (copy attached), to be indemnified and held harmless by Resorts to the fullest extent authorized by Delaware General Corporations Law, against, among other things, all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by him in connection with any action, suit or proceeding to which he has been made a party by reason of the fact that he was a director or officer of Resorts.

MG has been made a party to the following actions by reason of the fact that he was a director or officer of Resorts and is therefore entitled to reimbursement for his costs, including his attorneys' fees and any judgment that may be rendered against him, in connection therewith:

1. *I.G. Davis, Jr. v. The Griffin Company*, (United States Bankruptcy Court

---

**9.** 28 U.S.C. § 1332(a)(1) provides:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

. (1) citizens of different States.

**10.** *See* Note 4.

for the District of New Jersey, adversary proceeding no. 90–1033): A wrongful termination action commenced by the former president of Resorts on or about October 19, 1989 against The Griffin Company and MG seeking damages in an unspecified amount.

In light of Chief Judge Gerry's opinion, the issue in this case is whether this matter should be remanded from this court to the district court pursuant to 28 U.S.C. § 1452(b) and Bankruptcy Rule 9027(e). As noted earlier in the opinion, the issue of whether the motion was correctly designated as a motion to withdraw the reference pursuant to § 157 or a motion to remand pursuant to Bankruptcy Rule 9027(e) does not change the duty of this court to prepare a report and recommendation pursuant to 9027(e). This court must analyze the plaintiff's arguments for seeking the return of this matter to the district court.

The plaintiff's reasons for seeking in its motion the withdrawal of the reference of this matter by the district court to the bankruptcy court is three-fold. First, the plaintiff argues that the underlying action is not a "core" proceeding under 28 U.S.C. § 157 as the action is not based upon federal bankruptcy laws. Second, the plaintiff argues that the action is not a "related" proceeding under § 157 since TGC and Griffin's alleged claims for indemnification and contribution against Debtor Resorts International creates an insignificant nexus between the cause of action and the bankruptcy proceeding. Third, the plaintiff argue that even if this action were "related to" the bankruptcy for purposes of 28 U.S.C. § 157, the reference should be withdrawn as the plaintiff is entitled to a trial by jury on its state law claims and adjudication of this proceeding by the bankruptcy court would result in a deprivation of plaintiff's constitutional right to a jury trial. These issues will be discussed in turn.

The first issue raised by the parties which this court addresses is whether the cause of action is a core proceeding within the definition of 28 U.S.C. § 157. The defendants contend that the action is core as to claims made indirectly against Resorts vis-a-vis plaintiff's claims against Griffin and TGC. Here defendants argue that the inclusion of "alter-ego" or corporate veil piercing theories, specifically that Griffin or Griffin and TGC dominated and controlled Resorts would transform assets belonging to Griffin and/or TGC into assets that would be available for Davis' recovery, and qualify such claims as "core proceedings" within the meaning of 28 U.S.C. § 157. Conversely, the plaintiff contends that his action against TGC and Griffin are not core as it is not based upon any right created by federal law. Title 28, Section 157(b)(1) and (2) provides:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use of lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

Title 28 U.S.C. § 157(b)(2) provides a non-exclusive list of core proceedings, the substance of which will be discussed as necessary, *infra.*

The court's initial starting point in deciding the question of whether a particular adversary complaint is a core or non-core proceeding under 28 U.S.C. § 157 is the landmark case of *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Federal Courts have noted that, "In Marathon, the United States Supreme Court held that 28 U.S.C. § 1471 (1976 ed., Supp. IV), the section which conferred broad adjudicative powers upon bankruptcy judges, was unconstitutional because those judges lacked Article III status, although they were passing judgment on state law claims." *Meadowlands Communications Inc., v. Banker's Trust Company, New York,* 79 B.R. 198, 199 (D.N.J.1987) (*citing In re Arnold Print Works,* 815 F.2d 165, 166 (1st Cir.1987); *In re Hardwicke Companies, Inc.,* 64 B.R. 113, 115 (S.D.N.Y. 1986).

In *Marathon,* a debtor that had filed for reorganization filed a suit in bankruptcy court "for alleged breaches of contract and warranty, as well as for alleged misrepresentation, coercion and duress." *Id.* 102 S.Ct. at 2864. On appeal the Supreme Court held that the bankruptcy court could not constitutionally adjudicate the debtor's state law claim because the jurisdiction given to the bankruptcy courts under the § 1471 of the 1978 Act was too broad. *Id.* at 2880. *See also In re Meyertech Corp.,* 831 F.2d 410, 416 (3d Cir.1987). In describing the state law claim in *Marathon,* the court noted that the suit "involves a right created by *state* law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the bankruptcy court." 102 S.Ct. at 2878.

Congress responded to *Marathon* by enacting the Bankruptcy Amendments and Federal Judgeship Act of 1984, which provided that "district courts shall have original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) and (b).

Under 28 U.S.C. § 157 "Each district court may provide that any and all cases under title 11 and any and all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Such an order of reference was entered by the district court for the District of New Jersey on July 23, 1984. Title 28 U.S.C. § 157(b)(1) further provides that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."

In the case of *Matter of Wood,* 825 F.2d 90 (5th Cir.1987), the Fifth Circuit was faced with the question of whether a proceeding brought against the debtors and a third party involving a dispute among the directors/stockholders of a medical clinic alleging an action for wrongful appropriation of corporate assets was a core proceeding within the meaning of 28 U.S.C. § 157. In this regard, the *Wood* court engaged in a significant analysis of both the United

States Supreme Court's holding in *Marathon Pipeline* and section 157 of the Bankruptcy Reform Act of 1984. *Id.* at 96. In particular, the *Wood* court focused upon the meaning of the term "core proceeding" under section 157, and the jurisdictional grants under 28 U.S.C. § 1334(b). The Fifth Circuit stated in this regard:

The meaning of core proceedings is illuminated also by the textual context in which it appears. Subsection 157(b)(1) vests full judicial power in bankruptcy courts over "core proceedings *arising under title 11, or arising in a case under title 11.*" The prepositional qualifications of core proceedings are taken from two of the three categories of jurisdiction set forth in section 1334(b): proceedings "arising in" title 11 cases, and "related to" title 11 cases. Although the purpose of this language in section 1334(b) is to define conjunctively the scope of jurisdiction, each category has a distinguishable meaning. These meanings become relevant because section 157 apparently equates core proceedings with the categories of "arising under" and "arising in" proceedings.

Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11. Apparently, the phrase was taken from 28 U.S.C. § 1331, conferring federal question jurisdiction in which it carries a similar and well-accepted meaning. The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

As defined above, the phrases "arising under" and "arising in" are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

Finally, the interpretation of core proceeding based on its equation with "arising under" and "arising in" proceedings comports with the interpretation suggested by *Marathon*. Justice Brennan's description of "core" matters parallels that of matters "arising under" title 11— matters invoking a substantive right created by federal bankruptcy law. Moreover, his comment that the matter could have proceeded absent the bankruptcy suggests a contrast with "arising in" proceedings—matters that could arise only in bankruptcy.

We hold, therefore, that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.

*Matter of Wood*, 825 F.2d at 96–97. (Footnotes omitted).

In the instant case, it is clear that plaintiff's claims against TGC and Griffin for breach of contract, tortious interference with contract rights and breach of covenants of good faith and fair dealings are state law claims which do not fit within the definition of a "core proceeding" under 28 U.S.C. § 157. Moreover, plaintiff's action is not a core proceeding as it does not invoke a substantive right provided by title 11 or which could arise only in the context of a bankruptcy case. *Matter of Wood*, 825 F.2d at 97. This court cannot reasonably conclude that plaintiff's severed claims against Griffin and TGC for breach of contract, tortious interference with contract rights and breach of covenants of good faith and fair dealing, all of which

occurred pre-petition are core proceedings. Under *Marathon* and the case law cited herein, these state law claims are non-core.

It is the defendant's position that plaintiff's claims against Griffin and TGC are indirectly claims against Resorts based upon "alter ego" or "piercing the corporate veil" type theories. Consequently, defendants argue that the severed claims against Griffin and TGC are actually claims against Resorts and thus the action is core pursuant to 28 U.S.C. § 157(b)(2)(B). As a basis for this position, defendants point to the fact that if judgments are obtained against Griffin and TGC, Resorts may be contractually obligated to indemnify the defendant Griffin pursuant to Resort's Amended Certification of Incorporation.[11]

The case of *Meadowlands Communications, Inc. v. Banker's Trust Company*, 79 B.R. 198 (D.N.J.1987) is constructive on the issue of whether a proceeding is a core or noncore proceeding within the meaning of 28 U.S.C. § 157. In *Meadowlands*, a debtor-in-possession filed an adversary complaint against two banks claiming that the banks had wrongfully converted the debtor's funds. The defendant banks had moved before the bankruptcy court for an order dismissing the complaint for lack of subject matter jurisdiction and in the alternative requesting the bankruptcy court to abstain from hearing the matter pursuant to 28 U.S.C. § 1334(c). The bankruptcy court denied the defendant's motion to dismiss the complaint on grounds that the subject matter of the dispute did not constitute a core proceeding within the meaning of 28 U.S.C. § 157(b)(3). On appeal, the District Court for the District of New Jersey held that the debtor's action for conversion was not a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The District Court observed "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." *Id.* at 199 (citations omitted).

The *Meadowlands* court also observed that:

"[T]he preferable approach is not simply to apply the terms of the statute but rather to analyze the nature of the underlying claim to determine whether, given constitutional constraints on bankruptcy jurisdiction enunciated in *Marathon*, that claim should be considered a core proceeding."

*Meadowlands*, 79 B.R. at 199–200 (*quoting Harley Hotels, Inc. v. Rain's International, Ltd.*, 57 B.R. 773, 780 (M.D.Pa.1985)).

In *Meadowlands*, the adversary complaint in its entirety was based solely on state common law theory of conversion. Similarly, Davis's claims in the instant adversary complaint are based entirely on state law including actions for breach of contract, tortious interference with contract rights and breach of covenants of good faith and fair dealing. The district court's reasoning in *Meadowlands* is applicable to this case. In the instant case, this court cannot mechanically apply § 157(b)(2), but rather must "analyze the nature of the underlying claim" to determine whether the action set forth in the complaint constitutes a core proceeding within the meaning of 28 U.S.C. § 157. *Meadowlands*, 79 B.R. at 199–200.

In the case of *In re Bar M Petroleum Company, Inc.*, 63 B.R. 343 (Bankr.W.D.

**11.** The Resorts Restated Certification of Incorporation provides in relevant part in Article Five 2(A):

(A) Right to Indemnification. Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she is or was a Director or officer of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans (hereinafter, an "indemnitee"), whether the basis of such proceeding is alleged action in an official capacity as a Director, officer, employee or agent or in any other capacity while serving as a Director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the Delaware General Corporation Law.... *See* Exhibit A to Appendix of Exhibits to Plaintiff's Motion for Reconsideration, filed June 29, 1990.

Tex.1986), the court commented on the potential pitfall of reading too broadly into the list of core proceedings under 28 U.S.C. § 157(b)(2).

> In *Bar M Petroleum,* the court observed: This Court agrees, however, with the majority of courts which have construed § 157(b)(2)(A)–(O) that the list provided therein must be interpreted in light of the Supreme Court decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Company,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *See e.g. Zweygardt v. Colorado National Bank of Denver,* 52 B.R. 229 (Bankr.D. Colo.1985); *Cameron v. Anderson (In re American Energy, Inc.),* 50 B.R. 175 (Bankr.D.N.D.1985); *Atlas Automation, Inc.,* 42 B.R. 246 (Bankr.E.D.Mich.1984). Read literally and broadly, § 157(b)(2)(O) would encompass even the lawsuit that was the subject of the *Marathon* decision. Subsection (b)(2)(C), if read to include every counterclaim of the estate, would permit a kind of "jurisdiction by ambush" that is impermissible. *Nanodata Computer Corp. v. Kollmorgen Corp. (In re Nanodata Computer Corp.),* 52 B.R. 334, 342 (Bankr.W.D.N. Y.1985).

*Bar M Petroleum,* 63 B.R. at 345.

Similarly in the case of *In re M.S.V., Inc.,* 97 B.R. 721, 729 (D.Mass.1989), the court observed that in the case of *In re Shaford Companies, Inc.,* 52 B.R. 832 (Bankr.D.N.H.1985), the debtors argued that their demand for royalties under a disputed franchise agreement constituted a "turnover" proceeding under 11 U.S.C. § 542 and 28 U.S.C. § 157(b)(2)(E). The court dismissed such a construction as tending to " 'remove *any* distinction between core and non-core proceedings for purposes of bankruptcy court jurisdiction.' *Id.* 'Any cause of action,' the court added, 'could be construed as a turnover in that sense.' *Id."   Id.* at 729 (citations omitted).

In *M.S.V., Inc.* the district court also held that a certain breach of contract action was a non-core proceeding. In that case the debtor filed a Chapter 11 petition and on the following day filed suit against the Bank of Boston ("BOB") seeking the turnover of property seized, a preliminary injunction to stop the sale of the debtor's assets scheduled for that day and damages resulting from the foreclosure. Approximately one month prior foreclosure proceedings had been initiated by BOB against MSV. The complaint was later amended to include a variety of state law claims. The breach of contract claim in that case was that BOB had breached its contractual obligations to MSV in two respects: (1) the "implied covenant of good faith" and (2) the obligation to take possession and dispose of collateral only upon the occurrence of a default under its security agreements. *Id.* at 725. In ruling on whether the debtor's breach of contract claim was a core proceeding, the *MSV* court noted:

> The case before this Court involves a breach of contract dispute which arose almost exactly a month before MSV filed its petition with the Bankruptcy Court. Likewise, at the time that BOB loaned the various sums in question to the plaintiffs, it was dealing with an ostensibly healthy member of the business community. There was no suggestion that making such loans would require BOB to litigate potential disputes in the Bankruptcy Court. To require BOB to do so now would be a clear violation of the concern for procedural fairness inherent in Article III. *See Crowell v. Benson,* 285 U.S. 22, 87, 52 S.Ct. 285, 306, 76 L.Ed. 598 (1932) (Brandeis J., dissenting).

97 B.R. at 726.

The Third Circuit in *In re Meyertech Corp.,* 831 F.2d 410, 418 (3d Cir.1987), held that an adversary proceeding instituted by a creditor against a Chapter 11 debtor based on state law product liability claims based upon a breach of warranty was properly characterized as a claim against the bankrupt estate, its allowance or disallowance being a "core" proceeding under § 157(b)(2)(B).

In so holding, the Third Circuit noted:

> Review of the cases struggling for a precise point of delineation between core and non-core proceedings reveals a common factor which clearly distinguishes

them from the present matter—they all refer to cases commenced *by the debtor* either prior to or postbankruptcy petition. Herein, we are confronted with an action brought *by a creditor* and we have found no cases where the core/non-core issue has arisen in this context.

We conclude that the reason for the dearth of cases on this converse situation is premised on the fact that this state law contract matter was initiated when Southeastern filed its proof of claim. This is not a situation akin to the above-mentioned cases where a debtor brought suit against either a creditor or a third party, but, rather, is an action which has as its foundation a question of the validity of a claim which accrued under state law against the bankrupt estate prior to bankruptcy.

*Id.* at 417.

The Third Circuit also noted:

We note that having concluded that the account receivable was effectively pled by Meyertech as a counterclaim, without question, this matter is also a core proceeding under § 157(b)(2)(C). However, to utilize this conclusion as definitive of this issue without further comment as to the core/non-core question seemed unfair due to the ex post facto nature of the determination of the propriety of the counterclaim.

831 F.2d at 418, fn. 9.

The Third Circuit also noted in its opinion:

It is difficult to perceive of a proceeding which would not fall under the all-encompassing language of either § 157(b)(2)(A) or § 157(b)(2)(O), but we are cautioned that an expansive interpretation of these provisions may lead to some seemingly incorrect and overbroad results regarding core proceedings.

831 F.2d at 416.

Courts have cautioned that a broad reading of 28 U.S.C. § 157(b)(2) could result in denying a party its procedural right and would be unfair. The Ninth Circuit in *In re Castlerock Properties*, 781 F.2d 159, 161–162 (9th Cir.1986) noted that it would

be unfair under facts of that case to categorize state law contract counterclaims as falling within provisions of § 157(b)(2)(C) where the counterclaims were asserted before a Proof of Claim was filed since the claimant would not have filed the proof of claim if the bankruptcy court had declined jurisdiction on the counterclaims; that the court should avoid characterizing a proceeding as "core" if to do so would raise constitutional problems; and that the apparent broad reading that can be given to § 157(b)(2) should be tempered by the *Marathon* decision.

The defendants assert herein that where applicable state law contains alter ego or corporate veil piercing theories, that may be asserted by creditors generally, such actions must be brought for the benefit of all creditors of the estate so that jurisdiction exists over these claims under 28 U.S.C. § 1334. The defendants assert that the plaintiff Davis' claims of negligent management, may be reduced to an allegation that the actions of Griffin and TGC reduced the fund from which Davis' purported claim against Resorts would otherwise have been paid. As such, the harm that Davis claims to have suffered as a result of defendants'. alleged acts of mismanagement is no different from that suffered by Resorts' creditors in general, and accordingly actions of this type are property of the estate and core proceedings under 28 U.S.C. § 157(b)(2)(A) or (E). The defendants argue that Davis' claims against Griffin and TGC are fundamentally interwined with the administration of Resorts' Chapter 11 case, and must therefore be heard by the bankruptcy court charged with the supervision of Resorts' reorganization proceedings.

In the case of *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152 (5th Cir.1987), the Fifth Circuit Court reversed decisions of the District Court and Bankruptcy Court, the Fifth Circuit there finding that a creditor's state court action against the debtor and non-debtor defendants based upon the Texas "alter ego" doctrine was stayed by 11 U.S.C. § 362 as to the nonbankrupt defendants. *Id.* at 1143. The Fifth Circuit

concluded that the creditor's alter ego action under Texas law was a right of action belonging to the debtor, S.I. Acquisition and as such, was "property of the estate" within the meaning of § 541(a)(1) and accordingly that the automatic stay of § 362(a)(3) applied to the creditor's state action. *Id.* at 1153.

In *St. Paul Fire and Marine Insurance Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989), the Second Circuit held that under Ohio law, a corporation would be able to assert an alter ego cause of action against its parent corporation, and the cause of action therefore becomes property of the estate of a bankrupt subsidiary, and is properly asserted by the trustee in bankruptcy. 884 F.2d at 703–704.

In the case of *Williams v. California 1st Bank*, 859 F.2d 664, 665 (9th Cir.1988), on an interlocutory appeal from two orders of the bankruptcy court denying a defendant bank's motions to dismiss and summary judgment in connection with an adversary proceeding brought by a bankruptcy trustee on behalf of the bankruptcy estate against the defendant bank for violation of the federal securities laws. The Ninth Circuit reversed the denial of the motion to dismiss. Debtor, a Mexican seafood distributor, was brought into an involuntary Chapter 7 bankruptcy when the financing of its business through the sale of investment contracts and notes collapsed. *Id.* at 665. The Trustee by way of ex parte application obtained bankruptcy court authorization to solicit and accept from investors assignments of their claims against the defendant bank. The Trustee filed suit against the bank on behalf of the investor and the estate alleging violations of state and federal securities law violations arising from the bank's participation in, knowledge of or approval of the debtor's alleged "Ponzi" scheme. *Id.* The bank challenged the trustee's standing to sue a third party on behalf of the creditors of the estate. The Ninth Circuit held that the trustee lacked authority to bring suit on the claims. In so holding, the Ninth Circuit relied on the pre-code case of *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) wherein the Supreme Court held that a reorganization trustee under Chapter X had no standing under the former Bankruptcy Act to assert, on behalf of the holders of the debtor's debentures, claims of misconduct against a third party, in that case the debenture holders under the indenture agreement. *Id.* at 666.

In its decision, the *Williams* court observed:

> The [*Caplin*] Court identified three factors militating against finding standing. First, nowhere in the statute did the Court find any provision enabling the trustee "to collect money not owed to the estate." *Caplin*, 406 U.S. at 428, 92 S.Ct. at 1685. Second, the Court noted that the debtor had no claim against the indenture trustee. At the most, then, the trustee's claims described a situation where the debtor and the indenture trustee were *in pari delicto*. *Id.* at 429–30, 92 S.Ct. at 1685–86. Since it appeared that the indenture trustee would be entitled to be subrogated to the position of the debenture holders against the debtor, the Court saw no advantage to giving the trustee standing to sue. *Id.* at 430, 92 S.Ct. at 1686. The third problem troubling the Court was the possibility that the trustee's suit on *behalf* of debenture holders could be "inconsistent with any independent actions that they might ·bring themselves." *Id.* at 431–32, 92 S.Ct. at 1687. The Court saw no reason to believe "that by giving petitioner standing to sue on behalf of the debenture holders we would reduce litigation." *Id.* at 434, 92 S.Ct. at 1688.

*Id.* at 666.

The *Williams* court reasoned that the trustee had no standing to bring a suit on behalf of the creditors notwithstanding the fact that the assignments were made. *Id.* The court recognized that the creditors assigned their claims only for the purpose of bringing the suit, "[a]s a result the Trustee as in *Caplin*, is attempting to 'collect money not owed to the estate.'" *Id.* at 667. The court also recognized that the debtor estate had no claim of its own to bring against the defendant bank. *Id.*

Finally, the *Williams* court noted that although investors who assigned their claims were precluded from bringing suits, there remained the potential from inconsistent action by those investors who did not assign their claims, and that by giving the trustee standing to sue such litigation would not be reduced. *Id.* at 667.

In the case of *In re Ozark Restaurant Equipment Co., Inc.* ("*Ozark*"), 816 F.2d 1222 (8th Cir.1987), the debtor a closely held corporation conducting a restaurant equipment supply operation filed for relief under Chapter 7 of the Bankruptcy Code. The debtor's Chapter 7 trustee filed three adversary proceedings which were subsequently consolidated for trial before the bankruptcy court. One of the proceedings was an alter ego action, which was brought solely by the trustee on behalf of all of Ozark's creditors against the defendants—principals of the debtor, Ozark. The creditors were asked to join in the action but none of them wished to. *In re Ozark*, 816 F.2d 1222 (8th Cir.1987). The bankruptcy court ordered judgment in favor of the trustee on all three claims. All but one defendant appealed the bankruptcy court's judgment. The district court issued an order affirming the bankruptcy court's holding except with regard to the alter ego action. The district court concluded that under the holding of the pre-Code case of *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), that a chapter 7 trustee had no standing on his own to bring an alter ego action on behalf of the debtor corporation's creditors. *Id.* at 1224.

The court noted that causes of action belonging to the debtor at the commencement of the case are included within the definition of property of the estate under § 541. *In re Ozark*, 816 F.2d at 1225. Under 11 U.S.C. § 704(1), the trustee is charged with the duty of asserting them whenever necessary for collection or preservation of the estate. *Id.* The *Ozark* court noted that under section 704, a trustee has the "authority to bring an action for damages on behalf of the debtor against corporate principals for alleged misconduct, mismanagement, or breach of fiduciary

duty, because these claims could have been asserted by the debtor corporation or by its stockholders in a derivative action." *Id.* The court noted that "whenever a cause of action 'belongs' to the debtor corporation, the trustee has the authority to pursue it in bankruptcy proceedings." *Id.* However, the *Ozark* court observed that where under state law, such obligations or liabilities run to the corporate creditors personally rather than to the corporation, such rights of action are not assets of the estate under section 541(a) that are enforceable by the trustee under § 704(1). *Id.* The *Ozark* court recognized that, under Arkansas law, the obligations and liabilities of an action to pierce the corporate veil do not run to the corporation, but to third parties, e.g. creditors of the corporation. *Id.*

The *Ozark* court noted that:

Further, although an action to pierce the corporate veil may be brought under a number of different theories, the "alter ego doctrine" of piercing the corporate veil

fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his own personal business, *and such liability arises from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation.* [Footnote omitted.] *The corporate form may be disregarded only where equity requires the action to assist a third party.* [Footnote omitted.] Accordingly, a sole shareholder may not choose to ignore the corporate entity when it suits his convenience. [Footnote omitted.]

1 Fletcher Cyclopedia, *supra*, § 41.10, at 397 (emphasis added).

Because the corporate entity will be disregarded under Arkansas law only if it has been abused to the detriment of a third person, and because the nature of the alter ego theory of piercing the corporate veil makes it one personal to the corporate creditors rather than the corporation itself, it is axiomatic that the claim does not become property of the estate under Section 541(a)(1), nor is it enforce-

able by the trustee under Section 704(1). Accordingly, we conclude that the trustee here does not have standing under these sections to bring an alter ego action on behalf of Ozark's creditors.

*Ozark,* 816 F.2d at 1225.

This court agrees with the reasoning of the court in *In re R.H.N. Realty Corp.,* 84 B.R. 356, 360 (Bankr.S.D.N.Y.1988) which in holding that a Chapter 7 trustee of a corporate debtor had no standing to bring, on behalf of the debtor's creditors, an action seeking turnover, on alter-ego theory, of partnership assets and no standing to bring claims against a partnership to require the partnership to indemnify debtor and to pay a deficiency judgment reasoned:

It is clear that the legal and equitable interests of the debtor which a trustee in bankruptcy must administer under 11 U.S.C. § 704 do not include the assets of non-debtor defendants. Nowhere in the statutory scheme is there any authority for a trustee in bankruptcy to assume the responsibility of suing nondebtor third parties on behalf of creditors of the estate by reason of an alter ego relationship and thereby preempt similar suits by the creditors of the debtor corporation. *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972); *Mixon v. Anderson, (In re Ozark Restaurant Equipment Co., Inc.)* 816 F.2d 1222 (8th Cir.1987). The corporate veil is never pierced for the benefit of the corporation debtor. *See* 1 Fletcher Cyclopedia on the Law of Private Corporations § 41.10 at 397 (1983). A Chapter 7 trustee simply does not have standing to bring an alter ego cause of action on behalf of the debtor's creditors.

*Id.* at 360.

Consequently, this court finds that the so-called alter ego action of Davis is not a core proceeding under 28 U.S.C. § 157.

■ Next, plaintiff has argued that the reference of this matter to the bankruptcy court should be withdrawn as the action against Griffin and TGC is not "related" to the Resorts bankruptcy case within the meaning of 28 U.S.C. § 157(a). For the same reason stated on the issue of whether the claims are core, the defendants also contend that the matter is related to the bankruptcy proceeding. The defendants argue that the matter is a related proceeding since Resorts may have a contractual obligation to indemnify Griffin. In this regard, Griffin has submitted a copy of a proof of claim for indemnification against the debtor, Resorts International, Inc. The plaintiffs argue that the defendants' potential claims for indemnification against Resorts are mere assertions which are not enough to make the action a related proceeding under 28 U.S.C. § 157, and that Griffin would have to have an absolute right to indemnification in order for the matter to be a related proceeding.

In *M.S.V., Inc., supra,* the court stated:

Even if a particular claim does not fall within the definition of a "core" proceeding, Congress has provided bankruptcy courts with the means to resolve disputes which are "related" to core proceedings. *See* 28 U.S.C. § 157(c)(2). Neither party seriously disputes that the plaintiffs' breach of contract is "related" to MSV's Title 11 proceeding within the meaning of the statute. The statute states that before the Bankruptcy Judge may assert jurisdiction over a related proceeding, he must have "the consent of all the parties to the proceeding." *Id.*

97 B.R. at 727.

The law governing whether a claim or proceeding is "related to" a bankruptcy proceeding was set forth by the Third Circuit in the cases of *In re Bobroff,* 766 F.2d 797 (3d Cir.1985) and *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984). While the *Pacor* court recognized that congressional intent behind § 1471(b) (now codified at 1334(b)) was to grant comprehensive jurisdiction to the bankruptcy courts so that they could effectively and efficiently adjudicate matters connected with the bankruptcy estate, that court also recognized that bankruptcy court jurisdiction over "related to" cases is not without statutory and Constitutional limitations. *Pacor,* 743 F.2d at 994. The court stated, "[f]or subject matter jurisdiction to exist [ ] there must

be some nexus between the 'related' civil proceeding and the title 11 case." *Id.* (citations omitted). The *Pacor* court applied the following test in its determination of whether the matter before it was "related to" the bankruptcy proceeding:

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* [citing cases]. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

On the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b)]. Judicial economy itself does not justify federal jurisdiction. [citing cases] "[J]urisdiction over non-bankruptcy controversies with third parties who are otherwise strangers to the civil proceedings and to the parent bankruptcy does not exist." [citing cases]

*Id.* (citations omitted) (emphasis in original).

In *Pacor, Inc. v. Higgins,* John and Louise Higgins initiated suit against Pacor, Inc. in Pennsylvania state court. They sought damages allegedly caused by Mr. Higgins' work-related exposure to asbestos supplied by Pacor, Inc., a distributor of chemical supplies. Pacor, Inc. thereafter filed a third-party complaint against the Johns–Manville Corporation, which Pacor claimed was the original manufacturer of the asbestos. In August 1982 Johns–Manville filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York. In February 1983 Pacor filed a Petition for Removal in the United States Bankruptcy Court for the Eastern District of Pennsylvania seeking to remove the entire state court action to the federal bankruptcy court. The issue ultimately presented to the court of appeals was whether the district court properly remanded the Higgins–Pacor action to state court on the grounds that that action was not "related to" the Manville bankruptcy proceedings and therefore the bankruptcy court lacked jurisdiction to hear the matter under 28 U.S.C. § 1471(b).

The Third Circuit upheld the district court's ruling in this regard. The court found that the primary action between Higgins and Pacor was not "related to" bankruptcy within the meaning of § 1471(b) (presently § 1334(b)) because that action would have no effect on the Manville bankruptcy estate. 743 F.2d at 995. The court stated that "At best, [the Pacor–Higgins action] is a mere precursor to the potential third party claim for indemnification by Pacor against Manville." *Id.* The *Pacor* court based its holding in this regard on the following findings of fact and conclusions of law.

(1) The outcome of the Higgins–Pacor action would in no way bind Manville, because it could not determine any rights, liabilities, or cause of action of the debtor.

(2) Since Manville is not a party to the Higgins–Pacor action, it could not be bound by res judicata or collateral estoppel.

(3) Even if the Higgins' dispute were resolved in favor of Higgins (thereby keeping open the possibility of a third party claim), Manville would still be able to relitigate any issue, or adopt any position, in response to a subsequent claim by Pacor.

(4) The bankruptcy estate could not be affected until the Pacor–Manville third party action was actually brought and tried.

(5) A judgment against plaintiff on the principal claim would make absolutely certain that the Manville estate could never be adversely affected. However, a judgment in favor of plaintiff Higgins does not necessarily affect the estate.

(6) Any judgment received by Higgins could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification.

(7) Higgins is not a creditor of Manville and has filed no claim against Manville. Any judgment obtained would therefore have no effect on the arrangement, standing, or priorities of the Manville creditors. There would be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim.

*Id.* at 995–96.

In *Bobroff,* 766 F.2d 797, the Third Circuit reiterated its finding in *Pacor* that " 'the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b)]. Judicial economy itself does not justify federal jurisdiction.' " *Id.* at 802 (quoting *Pacor,* 743 F.2d at 994).

The Third Circuit in *Pacor* distinguished the case of *In re Brentano's,* 27 B.R. 90 (Bankr.S.D.N.Y.1983) as follows:

In *In re Brentano's,* 27 B.R. 90 (Bankr. S.D.N.Y.1983), MacMillan, (a nondebtor) agreed to act as guarantor of Brentano's (the debtor's) obligations under a lease. In turn, Brentano's contractually agreed to indemnify MacMillan for any liability or judgments incurred as a result of this guarantee agreement. When Brentano's defaulted on the lease, the landlord sued MacMillan to enforce the guarantee. MacMillan successfully removed the action to bankruptcy court as a proceeding "related to" bankruptcy.

In *Brentano's,* however, it is clear that the action between the landlord and MacMillan could and would affect the estate in bankruptcy. By virtue of the indemnification agreement between Brentano's and MacMillan, a judgment in favor of the landlord on the guarantee action would automatically result in indemnification liability against Brentano's. *See also In re Johnie T. Patton, Inc.,* 12

B.R. 470 (Bankr.D.Nev.1981); *In re Lucasa International, Ltd.,* 6 B.R. 717 (Bankr.S.D.N.Y.1980); *In re Brothers Coal Co.,* 6 B.R. 567 (Bankr.W.D.Va. 1980) (all involving guarantors of debtor's obligations). Moreover, even in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor's obligations will necessarily affect that the creditor's status vis a vis other creditors, and administration of the estate therefore depends upon the outcome of that litigation.

*Id.* at 995. *See also A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1001 (4th Cir. 1986), *cert. den.* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) ("The clear implication of the [Pacor] decision is that, if there had been a contract to indemnify, a contrary result would have been in order").

In *Meadowlands, supra,* the United States District Court for the District of New Jersey, relying on the Third Circuit decision in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984), noted that under 28 U.S.C. § 157(b)(1):

"An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.*

*Meadowlands,* 79 B.R. at 200. The defendants argue that as much as Davis' claims arise out of conduct in which Griffin is alleged to have engaged in as Chairman of the Board of Directors and Chief Executive Officer of Resorts, Griffin has a contractual right to indemnification from Resorts under Article Five 2(A) of Resorts Restated Certificate of Incorporation as amended on June 15, 1987. The Court agrees that the outcome of plaintiff's action against Griffin and TGC could potentially alter Resort's rights and liabilities and will have an impact on the administration of this estate based upon the indemnification clause of Resorts's Amended Certification of Incorporation.

The issue here is whether Davis' action would alter the debtor's freedom of action, right and liability and in any way impact upon the handling and administration of Resorts' bankruptcy case. Griffin has filed a proof of claim against Resorts for indemnification in several pending litigation matters including Davis'. This court has not been made aware of a proof of claim for indemnification filed on behalf of TGC. Without doubt, the filing of a proof of claim and consequently the demand to share in the pro rata share of distribution of the estate in connection with Davis' action has some effect on debtor's estate and its rights, liability and freedom of action. While a separate proceeding might be required to determine whether in fact Resorts was required to indemnify Griffin, should Davis prevail in his action against TGC and Griffin, there is "potential" contractual liability on the part of Resorts.[12]

Accordingly, this court finds that pursuant to 28 U.S.C. § 157 Davis' action, while non-core, is related to Resorts' bankruptcy proceeding.

The plaintiff next contends that the reference of this action should be withdrawn since plaintiff is entitled to a jury trial on his state law claims. Plaintiff further contends that in light of certain discord between the circuits on whether jury trials can be conducted in bankruptcy court, this court cannot conduct a jury trial, thus the reference should be withdrawn. Conversely, the defendants argue that the jury trial issue is premature and that it can be decided at a later time.

■■■■ This court must now look to the Seventh Amendment of the United States Constitution in order to determine whether Defendant is entitled to a jury trial. The Seventh Amendment provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved....

The United States Supreme Court has held that "suits at common law" are suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989). In *Granfinanciera*, the court citing its earlier statement in *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970), observed that "[L]egal claims are not magically converted into equitable issue by their presentation to a court of equity." 109 S.Ct. at 2795. A party who seeks relief legal in nature is entitled to a jury trial as a matter of right and the presence of claims to equitable relief does not generally alter that right. *Dailey v. First Peoples Bank of New Jersey*, 76 B.R. 963, 966 (D.N.J.1987). It is also well established that an action which seeks recovery of a money judgment is an action at law. *Granfinanciera*, 109 S.Ct. at 2793.

In *Granfinanciera, S.A. v. Nordberg*, the United States Supreme Court held that the person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer. *Granfinanciera, S.A.*, 109 S.Ct. at 2787. The *Granfinanciera* court addressed the issue of whether the Seventh Amendment confers on the petitioners a right to a jury trial in the face of Congress' decision to allow a non-article III tribunal to adjudicate the claims against them. *Id.* at 2795. The Supreme Court observed in *Granfinanciera*, that:

> [i]n certain situations, of course, Congress may fashion causes of action that are closely *analogous* to common-law claims and place them beyond the ambit of the Seventh Amendment by assigning their resolution to a forum in which jury trials are unavailable.

*Granfinanciera*, 109 S.Ct. at 2796. However, the Court also noted that "... Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the causes of action to which it attaches and placing exclusive jurisdiction in an administrative agency or a specialized

---

**12.** *See* Note 11.

court of equity." *Granfinanciera,* 109 S.Ct. at 2800.

■ The Supreme Court has made it clear that the Seventh Amendment right to a jury trial remains viable in the bankruptcy courts. However, the Supreme Court did refrain from determining whether a bankruptcy court could conduct a jury trial in a fraudulent conveyance action under the current jury trial provision, 28 U.S.C. § 1411.[13] *Granfinanciera,* 109 S.Ct. at 2802. The Court stated:

We do not decide today whether the current jury trial provision—28 U.S.C. § 1411 (1982 ed., Supp. IV)—permits bankruptcy courts to conduct jury trials in fraudulent conveyance actions like the one respondent initiated. Nor do we express any view as to whether the Seventh Amendment or Article III allows jury trials in such actions to be held before non-Article III bankruptcy judges subject to the oversight provided by the district courts pursuant to the 1984 Amendments. We leave those issues for future decisions.

*Id.* It cannot be disputed herein that plaintiff's action against TGC and Griffin for breach of contract, tortious interference with contract rights and breach of covenants of good faith and fair dealing are essentially common law causes of action which are legal rather than equitable in nature. As *Granfinanciera* makes abundantly clear, the mere presentation of legal claims to a court of equity does not "magically" convert a legal cause of action into an equitable one. *Granfinanciera,* 109 S.Ct. at 2795 (citing *Ross,* 90 S.Ct. at 738). However, under certain circumstances, the Supreme Court has recognized that a legal right may be converted into an equitable claim when submitted to the bankruptcy court. In *Dailey,* the United States District Court for the District of New Jersey

reasoned that under *Katchen v. Landy,* 382 U.S. 323, 337, 86 S.Ct. 467, 477, 15 L.Ed.2d 391 (1966), legal claims against a bankrupt which become equitable under the jurisdiction of the bankruptcy court are those which claim a share of the "res", the bankruptcy estate, over which the bankruptcy court has control. *Dailey,* 76 B.R. at 966.

In *Katchen v. Landy,* the Supreme Court was faced with the question of whether a bankruptcy court had summary jurisdiction to order a creditor, the petitioner therein, to surrender voidable preferences asserted and proved by the trustee in response to a claim filed by the creditor who received the preferences. *Katchen,* 86 S.Ct. at 470. "The crux of the dispute" in *Katchen* was the proper mode of procedure for trying the preference action. *Katchen,* 86 S.Ct. at 471. In *Katchen* the Supreme Court addressed the issue of whether the petitioner had a Seventh Amendment right to a jury trial. The *Katchen* court stated:

although petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, *Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 53 S.Ct. 50 [77 L.Ed. 185 (1932)], when the same issues arise as part of the process of allowance and disallowance of claims, it is triable in equity. The Bankruptcy Act, passed pursuant to the power given to Congress by Article 1, § 8, of the Constitution, to establish uniform laws on the subject of bankruptcy, converts the creditors' legal claim into an equitable claim to a pro rata share of the *res. Gardner v. State of New Jersey,* 329 U.S. 565, 573–574, 67 S.Ct. 467, 471–472 [91 L.Ed. 504 (1947)], a share which can neither be determined nor allowed until the creditor

---

**13.** There is currently a split in the Circuits regarding the issue of whether the bankruptcy court has the authority to conduct jury trials. *Compare In re Ben Cooper Inc.,* 896 F.2d 1394 (2d Cir.1990) (holding that bankruptcy court has both statutory and constitutional authority to conduct a jury trial in core proceedings), *with In re United Missouri Bank of Kansas City,* 901 F.2d 1449 (8th Cir.1990), *reh'g. denied, en*

*banc* 1990 WL 48555, (holding that there exists no statutory authorization afforded bankruptcy judges or bankruptcy courts to conduct jury trials on legal proceedings, constitutional issues not reached); *In re Kaiser Steel Corporation,* 911 F.2d 380 (10th Cir.1990) (no statutory authority granted bankruptcy court to conduct jury trial). As of this writing, the Supreme Court has granted certiorari in the *Ben Cooper* case.

disgorges the alleged voidable preference he has already received.

*Id.* at 476. The Court in *Katchen* reasoned that the filing of a claim was an assertion to part of the "res" of the debtor's estate and that in that situation under the Bankruptcy Act, a creditor's legal claim is converted into an equitable claim to a pro rata share of the *res. Katchen*, 86 S.Ct. at 476 (*citing Gardner v. State of New Jersey*, 329 U.S. 565, 573–57, 67 S.Ct. 467, 471–472). The Court further noted that there is no Seventh Amendment right to a jury trial in the determination of objections to claims. *Id.* While the *Katchen* case was decided pre-code, the reasoning set forth therein has been fortified most recently in *Granfinanciera*. The Court in *Granfinanciera* observed:

> We read *Schoenthal* and *Katchen* as holding that under the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate, not upon Congress' precise definition of the "bankruptcy estate" or upon whether Congress chanced to deny jury trials to creditors who have not filed claims and who are sued by a trustee to recover an alleged preference.

*Granfinanciera*, 109 S.Ct. at 2799. The *Granfinanciera* court reasoned in the case before it that the petitioners had not filed claims against the estate so that the trustee's fraudulent conveyance action did not arise "as part of the process of allowance or disallowance of claims", "[n]or is that action integral to the restructuring of debtor-creditor relations" and therefore Congress could not divest the petitioners of their right to a jury trial under the Seventh Amendment. *Id.* The court in *Granfinanciera* also noted its earlier reasoning in *Alexander v. Hillman*, 296 U.S. 222, 241–242, 56 S.Ct. 204, 210–211, 80 L.Ed. 192 (1935) that "by presenting their claims respondents subjected themselves to all the consequences that attach to an appearance...." *Granfinanciera*, 109 S.Ct. 2799 n. 14. In the instant case, it is clear that Davis's state law claims for breach of contract, tortious interference with contract

rights, and breach of covenants of good faith and fair dealing are legal in nature, and thus Davis is entitled to a jury trial as a matter of right.

A leading case in this circuit on jury trials in the bankruptcy court is *Dailey v. First Peoples Bank of New Jersey*, 76 B.R. 963 (D.N.J.1987). *Dailey* involved an action originally instituted in state court for breach of contract and allegations of fraud in a real estate transaction. Defendants First Peoples Bank of New Jersey and others filed a third party complaint against a number of individuals, including two debtors. The trustee for the estates of those debtor defendants sought and obtained removal of the action from the Superior Court of New Jersey to the United States District Court for the District of New Jersey. The trustee then moved for referral of the action to the bankruptcy court for the District of New Jersey where the debtor third-party defendants' bankruptcy petitions were pending. The plaintiffs opposed referral on the ground that referral of the action to the bankruptcy court would deny plaintiffs their Seventh Amendment right to trial by jury. In that decision Chief Judge Gerry observed:

> We find that the *Katchen* decision does not affect plaintiffs' right to a jury trial in this matter. In particular, we note that the plaintiffs have asserted no claim *at all* to any part of the bankrupt's estate. Rather, they claim damages for breach of contract against the defendant bank, not against the estate of the bankrupts. Indeed, we note that the third-party complaint does not state a claim for some share of the res. Thus, we find that plaintiffs' claim does not fall into that class of claims which *Katchen* holds are converted from legal to equitable under the jurisdiction of the bankruptcy court. Plaintiffs do have a 7th Amendment right to a trial by jury.

*Dailey*, 76 B.R. at 966.

In *Dailey*, Chief Judge Gerry determined that the bankruptcy court possesses both statutory and constitutional power to hold jury trials in "core proceedings" as those proceedings are defined under 28 U.S.C.

§ 157(b)(2). 76 B.R. at 968. Chief Judge Gerry further held that in proceedings which are deemed to be non-core or "otherwise related to cases under title 11" (28 U.S.C. § 157), that Congress has not authorized jury trials by the bankruptcy court in these matters. *Dailey,* 76 B.R. at 968. In this regard, Chief Judge Gerry wrote:

> Proceedings not found to be core proceedings are deemed "otherwise related to cases under Title 11." Bankruptcy judges lack the power to enter final orders or judgments as to "otherwise related" proceedings without the consent of the parties. 28 U.S.C. § 157(c)(1) and (2). Indeed, without consent of the parties, bankruptcy judges may enter only *proposed* findings of fact and conclusions of law to the district court as to "otherwise related" issues. § 157(c)(1). It therefore appears that Congress contemplated no role for a jury in "otherwise related" proceedings; would a jury's findings be mere proposals? If so, this would be a complete departure from the jury's historical duty and authority. Further, as we suggest briefly above, there may be constitutional problems with jury trials of "otherwise related" issues. Thus, we find that Congress has not authorized jury trials in "otherwise related" bankruptcy proceedings. *In re Arnold Print Works, Inc.,* 54 B.R. 562, 13 B.C.D. 883 (Bkrtcy.D.Mass.1985); *see generally* 1 Collier Bankruptcy Manual, ¶ 3.01, *supra.* The ability, then, of the bankruptcy court to vindicate the plaintiff's right to a jury trial depends on whether that action constitutes a "core proceeding."

*Id.* at 968.

Having determined that Davis' claims against Griffin and TGC are non-core related proceedings, the bankruptcy court is without authority to conduct a jury trial on those claims. The causes of action set forth in the complaint for breach of contract, tortious interference with contract rights, and breach of covenants of good faith and fair dealing are clearly legal claims to which the plaintiff has a right to trial by jury guaranteed by the Seventh Amendment. Preservation of the plaintiff's right to proceed to trial by jury on his claims in this action, as guaranteed by the Seventh Amendment constitutes in this Court's view "equitable grounds" to remand this action to the District Court. Defendants argue that Davis may have waived any right that he might otherwise have had to a jury trial in this adversary proceeding by filing a proof of claim in the Resorts Chapter 11 proceeding, thereby submitting to the equitable jurisdiction of the Bankruptcy Court. In this respect, the Court must differentiate between Davis' claims against Resorts, represented by the filing of a proof of claim, and his claims against Griffin and TGC, non-debtors here. Nor has defendants demonstrated otherwise that at this point in the proceedings Davis has waived his right to a jury trial.

This Court accordingly recommends to the District Court that "equitable grounds" as set forth above warrant remand of this action from this court to the United States District Court for the District of New Jersey.